**DALEWOOD REHABILITATION HOSPITAL, INC., d/b/a Golden State Habilitation Convalescent Center, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 76–2634.

United States Court of Appeals, Ninth Circuit.

Dec. 19, 1977.

· Andrew C. Peterson, Jr., of Paul, Hastings & Janofsky, Michael Posner, of Geffner & Satzman, Los Angeles, Cal., for petitioner.

Elliott Moore, N. L. R. B., Washington, D. C., Wilford W. Johansen, Regional Counsel-Region 21, N. L. R. B., Los Angeles, Cal., for respondent.

Before TRASK and GOODWIN, Circuit Judges, and SOLOMON,* District Judge.

SOLOMON, District Judge:

Dalewood Rehabilitation Hospital, Inc. (the Hospital) seeks to review and the National Labor Relations Board (the Board) seeks to enforce the Board's order requiring the Hospital to bargain with its employees' representatives.

An administrative law judge held that the Hospital's refusal to bargain did not violate Sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and § 158(a)(5) (the Act), because the Hospital had reasonable grounds for a good faith doubt that the union represented a majority of the employees in the bargaining unit.[1] The Board reversed the holding of the administrative law judge and ordered the Hospital to bargain collectively with the union.

This court has jurisdiction pursuant to 29 U.S.C. § 160(f).

The Hospital operates a convalescent home in Baldwin Park, California, called the Golden State Habilitation Convalescent Center. On September 24, 1973, the Board certified the Hospital and Service Employees Union, Local 399, Service Employees International Union, AFL–CIO, (the Union) as the exclusive bargaining agent for about 100 of the Hospital's employees, including dietary, housekeeping, laundry and maintenance workers, orderlies, nurses, nurses' aides and physical therapists.

On August 19, 1974, the Hospital and the Union entered into a one-year collective bargaining agreement effective through August 18, 1975. The agreement contained a union shop provision which required all workers in the bargaining unit to join the Union within 31 days after they were hired and to remain members in good standing. Another provision allowed an automatic checkoff of union dues if the employee submitted a written authorization.

The administrative law judge found that the Hospital had been told that employees had filed a decertification petition in 1974, which the Board either rejected or

---

* Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

1. Sections 158(a)(1) and 158(a)(5) provide:
   "(a) It shall be an unfair labor practice for an employer—

   (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

   (5) to refuse to bargain collectively with the representatives of his employees . . .."

dismissed under the contract bar rule.[2] The Board had no evidence of the petition in its files.

On October 22, 1974, 43 of the workers in the unit filed a petition for withdrawal of union shop authority. At an election held on February 2, 1975, 55 of the 97 eligible workers voted to deauthorize the Union; only 28 employees voted to continue the union shop.

On April 14, 1975, the Union gave the Hospital notice that the Union wanted to cancel the existing contract and open negotiations for a new contract effective August 19, 1975. On the following day, April 15, the Union filed with the Federal Mediation and Conciliation Service a 60-day notice of intent to cancel the existing contract.

The Hospital responded to the April 14 letter on May 19, 1975, saying that the Hospital also desired to cancel the contract. The Hospital also announced that it would not negotiate for a new contract because it had a good faith doubt of the Union's majority status. The Hospital had no history of anti-union animus.

On June 2, 1975, the Hospital filed for a representation election. The petition eventually was dismissed because the Union filed a complaint with the Board on June 20, 1975, asserting that the Hospital's refusal to bargain violated Sections 8(a)(1) and 8(a)(5) of the Act.

On July 17, 1975, the Union again wrote the Hospital that it wanted to start negotiations for a new contract as early as possible.

Both before and after the deauthorization election, employees often complained to their supervisors that they did not want union representation because they did not want to pay union dues. Some employees told their supervisors that a majority of the employees in the unit for that reason did not want the Union.

During the life of the contract, fewer than 26 employees authorized the dues checkoff, and the number on May 19, 1975, had dropped to 18. During that same period, there was a 90 per cent turnover in the unit.

On November 17, 1975, an administrative law judge dismissed the Union's complaint. He ruled that the Hospital, based on a combination of four factors, had adequate objective grounds for a good faith doubt that the Union represented a majority. Those factors are: (1) employee complaints that more than half the workers did not want union representation; (2) a high turnover rate; (3) the deauthorization vote; and (4) the small and declining number of authorized dues checkoffs.

On June 23, 1976, the Board reversed the administrative law judge and found that the Hospital had violated the Act.

The Board rejected the employee complaints as a basis for a good faith doubt because reliance on the complaints of a few employees would permit a few anti-union employees to provide the basis for withdrawal of recognition when there was an insufficient basis to doubt the Union's majority status.

The Board also held that, absent evidence to the contrary, new employees are presumed to support the Union in the same ratio as their predecessors and therefore the turnover rate could not be a basis for a good faith doubt about the Union's status.

The Board discounted the deauthorization vote and the small number of checkoffs on the ground that the unwillingness of a majority to pay dues does not necessarily show that the majority does not want union representation.

The Board concluded that each factor considered separately did not give petitioner reasonable grounds to doubt the Union's majority status and that the evidence as a whole was no greater than the sum of its separate parts. The Board ordered the Hospital to bargain with the Union.

2. Under that rule, a collective bargaining agreement acts as a bar to an election unless the petition for the election is filed more than 60 and less than 90 days before the expiration of the agreement. *Retired Persons Pharmacy v. N.L.R.B.*, 519 F.2d 486, 488 n.1 (2d Cir. 1975).

■ The Board's ruling must be upheld if it is supported by substantial evidence on the record considered in its entirety. *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 487–488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951). But

"a reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view."

The Court further stated that the administrative law judge's report is as much a part of the record as the testimony, 340 U.S. at 493, 71 S.Ct. 456, and that

"evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion." (*Id.* at 496, 71 S.Ct. at 469).

The parties agree that there is a rebuttable presumption that an incumbent union's majority status continues after the first year following certification, *Terrell Machine Company v. N.L.R.B.*, 427 F.2d 1088, 1090 (4th Cir. 1970), *cert. denied*, 398 U.S. 929, 90 S.Ct. 1821, 26 L.Ed.2d 91 (1970), but that an employer's refusal to bargain would not be a violation of the Act and the presumption is rebutted if the employer showed "that the union no longer had majority support or that his refusal to bargain was predicated upon a reasonably grounded good faith doubt of majority support." *N.L.R.B. v. Vegas Vic, Inc.*, 546 F.2d 828, 829 (9th Cir. 1976), *cert. denied*, —— U.S. ——, 98 S.Ct. 57, 54 L.Ed.2d 74 (1977).

The Hospital contends that all of the factors the administrative law judge considered, taken together, provided the basis for a reasonable doubt of the Union's majority status.

■ The courts require an assessment of the cumulative force of the combination of factors. *Royal Typewriter Company v. N.L.R.B.*, 533 F.2d 1030 (8th Cir. 1976); *Ingress-Plastene, Inc. v. N.L.R.B.*, 430 F.2d 542 (7th Cir. 1970). Even when each factor considered alone is insufficient for a good faith doubt of majority status, the combination may be adequate. *National Cash Register Company v. N.L.R.B.*, 494 F.2d 189, 195 (8th Cir. 1974).

■ We believe the combination here was adequate. The employee complaints, the turnover, the deauthorization vote and the decline in the number of authorized dues checkoffs all indicate a loss of Union support. *Automated Business Systems v. N.L.R.B.*, 497 F.2d 262 (6th Cir. 1974); *Teamsters Local Union 769 v. N.L.R.B.*, 174 U.S.App.D.C. 310, 315, 532 F.2d 1385, 1390 (1976). In addition, the administrative law judge believed the testimony on the filing of a decertification petition, a factor the Board ignored.[3] That testimony shows that the employees objected not only to paying dues but also to Union representation.

We hold that the Hospital rebutted the presumption of continued majority status. The burden then shifted to the Board to prove that the Union represented a majority on the day the Hospital refused to bargain. *Orion Corporation v. N.L.R.B.*, 515 F.2d 81 (7th Cir. 1975). The Board presented no evidence on that issue.

■ We hold that the Board's finding was not supported by substantial evidence considering the record as a whole. Enforcement is therefore denied.

---

**3.** When credibility is an issue, the administrative law judge's conclusions assume added importance because the administrative law judge "has the responsibility of evaluating the credibility of witnesses and the weight to be given their testimony." (citations omitted). *N.L.R.B. v. Vegas Vic, Inc., supra* at 828.