**BOB'S BIG BOY FAMILY RESTAU-RANTS, a Division of Marriott Corporation, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 78–3609.

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 7, 1979.

Decided July 28, 1980.

Carlton J. Trosclair, Washington, D.C., Ivan H. Rich, Jr., Barnett & Alagia, Louisville, Ky., for petitioner.

Anton Hajjar, Washington, D.C., argued, for respondent; Elliott Moore, Washington, D.C., on brief.

Before GOODWIN, WALLACE and FARRIS, Circuit Judges.

WALLACE, Circuit Judge.

This petition seeks review of a National Labor Relations Board (Board) refusal to apply its "contract-bar" rule. It requires us to determine the scope of the Board's discretion in applying its own rules. Finding that the Board failed to justify its departure from prior announcements of policy and procedure, we deny enforcement and remand.

## I.

Bob's Big Boy Family Restaurants (Company) signed a collective bargaining agreement with Bob's Employees' Association (Association) in December 1974. Approximately three years later, Local No. 37 of the Bakery and Confectionary Workers International Union (Local 37) petitioned the Board to hold a representation election so that the Company's employees could elect Local 37 as their exclusive bargaining representative. The Board refused to find that the Local 37 petition was barred by the Company-Association contract, *Bob's Big Boy Family Restaurants*, 235 N.L.R.B. 1227 (1978), and at the resulting representation election Local 37 was chosen to represent the Company's employees. The Company subsequently refused to bargain with Local 37, and the Board held that it thereby committed an unfair labor practice. 238 N.L.R.B. No. 95 (1979). The Company is thus now able to challenge the Board's refusal to apply the contract-bar rule to the petition

for a representation election.[1] The Board makes a cross-application for enforcement of its order.

The contract-bar rule is a Board-created limitation on the National Labor Relations Act's (NLRA) section 9(c) direction that the Board stage a representation election when it finds that a question of representation exists. 29 U.S.C. § 159(c)(1). The rule was formulated by the Board in an effort to reconcile the NLRA's goals of promoting industrial stability and employee freedom of choice. *Appalachian Shale Prod. Co.*, 121 N.L.R.B. 1160, 1161 (1958); see *Leedom v. IBEW Local 108*, 278 F.2d 237, 242 (D.C. Cir. 1960). As part of this accommodation, the Board has ruled that a valid contract for a period not exceeding three years will bar a representation election unless the representation petition is filed more than 60 and less than 90 days before the end of the contract. *See Dalewood Rehabilitation Hospital, Inc. v. NLRB*, 566 F.2d 77, 79 n. 2 (9th Cir. 1977). If the contract term exceeds three years, a petition will be dismissed if it is outside the 60–90 day period preceding the contract's third anniversary date, even though it is filed between 60 and 90 days before the contract's actual expiration date. *Union Carbide Corp.*, 190 N.L.R.B. 191 (1971). Moreover, the 60–90 day period is strictly construed, and petitions filed on the 59th day are generally dismissed. *Brown Co.*, 178 N.L.R.B. 57 (1969).

This case arose because of Local 37's confusion over the length of the contract period for the Company-Association agreement. Although the agreement ran for three years and 20 days according to its terms (December 11, 1974, to December 31, 1977), Local 37 relied on the dates found on the cover of booklet-form copies of the contract which were printed and distributed by the Association to the employees. The cover bore the inscription: "January 1, 1975 through December 31, 1977." The net effect of Local

1. This procedure, known as a technical refusal to bargain, is the accepted method of obtaining appellate review of representation cases under section 9 of the National Labor Relations Act (NLRA), 29 U.S.C. § 159. *Hecla Mining Co. v. NLRB*, 564 F.2d 309, 313 (9th Cir. 1977).

37's confusion was that its October 13, 1977 filing fell comfortably within the 60–90 day period preceding January 1, 1978, but fell only 59 days prior to the final day of the three-year period ending December 11, 1977. Although the election petition was thus untimely, the Board's regional director held that the contract could not bar the election because it did not meet the requirement that it clearly cover the unit of employees in question. In turn, the Board upheld the decision of the regional director, although relying on different grounds.

The Board based its ruling on two grounds. First, it found that the contract between the Company and the Association could not bar the election because it contained an illegal "members only" provision. Second, the Board found that the Company was prevented from asserting the untimeliness of the petition because it acquiesced in the printing and distribution of the misleading copies of the contract. We will confront each of these reasons in turn.

## II.

In reconciling the competing goals of stability and employee choice, the Board has created an exception to the contract-bar rule for contracts that illegally discriminate against non-union employees. The policy behind the exception is that such contracts do not establish the kind of stability that the NLRA seeks to protect. *Paragon Prod. Corp.*, 134 N.L.R.B. 662, 663 (1961); R. Gorman, *Labor Law* 55–56 (1976). For example, the Board has held that a contract which contains a provision extending special benefits to union members only, known as a "members only" clause, will not bar an election petition. *Radio Frequency Connectors Corp.*, 126 N.L.R.B. 1076 (1960).

The contract between the Association and the Company provides that "all Association members" are eligible for the health insurance plan after one year of employment. This provision would appear illegally to encourage full-fledged membership in the Association by limiting health insurance benefits to Association members. The Company points out, however, that the contract's un-

ion-security clause requires employees to become members of the Association within 60 days of employment. This clause is valid under the NLRA because it provides that membership is maintained by only the tender of dues and initiation fees. *See NLRB v. General Motors Corp.*, 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963); *NLRB v. Hershey Foods Corp.*, 513 F.2d 1083, 1087 (9th Cir. 1975). The Company argues that since all employees who have worked for the Company at least a year must be Association members, the health benefits provision does not discriminate against those who do not wish to become full-fledged Association members. The Company contends further that the health insurance provision is at least ambiguous and therefore subject to the NLRB's *Paragon Products* rule upholding the validity of ambiguous contract provisions. *See Paragon Prod. Corp.*, 134 N.L.R.B. 662 (1961). The Board rejected the Company's argument because of the "possibility that an employee, refusing formal membership in the Association, may nevertheless continue his employment beyond the 60-day grace period if he tenders the periodic dues and initiation fees required under Section 8(a)(3)." 235 N.L.R.B. at 1228 (footnotes omitted).

█ Our review is limited to determining whether the Board abused its discretion. *Hecla Mining Co. v. NLRB*, 564 F.2d 309, 313 (9th Cir. 1977). Agencies, however, are required to explain departures from agency policies or rules so that a reviewing court is able to determine if the agency was acting in a reasoned, deliberate manner. *See, e. g., NLRB v. Metropolitan Life Ins. Co.*, 380 U.S. 438, 442–43, 85 S.Ct. 1061, 1063–64, 13 L.Ed.2d 951 (1965).

█ Two well established Board rules are applicable here. First, the Board will not consider extrinsic evidence to determine if ambiguous contract provisions were intended to have, or in practice had, illegal effects. *Keystone Coat, Apron & Towel Supply Co.*, 121 N.L.R.B. 880 (1958). *See also Jet-Pak Corp.*, 231 N.L.R.B. 552 (1977); *Loree Footwear Corp.*, 197 N.L.R.B. 662

(1961). Despite these rules, the Board here considered and relied upon testimony tending to refute the Company's claims that dues and fees were the only condition of Association membership under the contract.[2] The Board does not explain this departure from well established procedures. Moreover, the Board's consideration of this extrinsic evidence appears to have prevented it from considering the Company's argument. For example, the Board's contention that an employee might be denied health benefits for exercising the statutory right to pay only dues and fees assumes that the health benefits clause requires "formal" Association membership rather than the "dues-and-fees" membership recognized in the contract's valid union-security clause. But the Company argues that an employee who renounces formal membership and only pays dues and fees still receives the health plan benefits. On remand, if the Board is to sustain the same result after excluding extrinsic evidence, it must explain why "membership" should be interpreted differently depending on whether the word appears in the union-security clause or the health plan benefits clause.

The most relevant decision relied upon by the Board is *Radio Frequency Connectors Corp., supra*, 126 N.L.R.B. 1076. There, the challenged contract clauses established a welfare plan "for the benefit of employees of the Employer, *members of the union*," and a wage schedule applicable to "*all union members.*" 126 N.L.R.B. at 1077 n.5 (emphasis in original). Although the Board held that the contract could not bar an election petition, there is no indication in the Board's opinion of whether there was a valid union-security clause elsewhere in the contract as there is here. Further, in *Radio*

*Frequency Connectors* the employer acknowledged that the provisions were illegal and discriminatory, but contended that the Board should have considered extrinsic evidence that the contract had been amended by oral agreement. The meaning of the challenged provisions was not at issue.

More in point is *H. L. Klion, Inc.*, 148 N.L.R.B. 656 (1964), where the Board held that a contract provision apparently giving special benefits to union members was ambiguous and not clearly illegal. The contract provided that part-time employees would receive pay increases "After 3 Months Service When Joining Union." *Id.* at 660. The contract also required part-time employees "to become and remain members of the Union after three months' service." *Id.* The Board found that the wage increase provision "while somewhat ambiguous, is not clearly unlawful when read in context with" the union-security clause. Applying its *Paragon Products* rule, the Board held that such a provision "does not remove the contract as a bar." *Id.* The Board does not mention *Klion* here, and we fail to see how its opinion comports with *Klion*.

On remand, the Board must follow its own precedent by excluding extrinsic evidence from its consideration. It must consider the policies underlying its *Paragon Products* rule and precedents such as *H. L. Klion, Inc., supra*, or explain why those rules should be disregarded.

### III.

■ The Board concluded that the Company was estopped to deny that the election petition was timely filed. Although the Board has considerable discretion in the formulation and application of its contract-bar

---

**2.** The evidence relied on by the Board is inconclusive and the Board's use of it conjectural. The Company witness' statement that the Company had required employees to "make application" for membership in the Association was made in reference to the union-security clause rather than the health benefits provision and in contemplation of a situation in which the grace period had ended and the employee had not been in contact with the Association. It was not addressed to a hypothetical situation in

which an employee tendered dues and fees in lieu of any formal application. In response to a follow-up question, the witness stated that "if [employees] pay their dues and initiation fees, they automatically are a member [of the Association], if my understanding is correct." The use made of this testimony by the Board in this case suggests the wisdom of its own *Paragon Products* rule forbidding the use of extrinsic evidence to determine the legality of a contract provision in a representation proceeding.

rule, it must explain departures from that rule. Further, our review becomes less restricted "as the Board's determination approaches the purely legal." *NLRB v. Tomco Communications, Inc.*, 567 F.2d 871, 876 n.2 (9th Cir. 1978). *See also NLRB v. Brown*, 380 U.S. 278, 292, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965) (courts have duty to set aside Board decisions based upon "erroneous legal foundation[s]"). Here, the Board does not specifically indicate whether it based its decision upon the doctrine of equitable estoppel or whether it created a new exception to its contract bar rule based upon some other principle. We are therefore unable to review properly the Board's actions.

 If it was the Board's intention to apply the doctrine of equitable estoppel, the following four elements must be present:

(1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

*Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir.), *cert. denied*, 364 U.S 882, 81 S.Ct. 170, 5 L.Ed.2d 103 (1960). There must be a showing that the Company acted in a manner calculated to mislead. The Company's acquiescence in the distribution of the contracts would not be sufficient unless the Company had a duty to speak. *See United States v. Georgia-Pacific Co.*, 421 F.2d 92, 97 (9th Cir. 1970). Because Local 37's attorney filed the late election petition, the Board must also address the issue whether it was the attorney who detrimentally relied upon the printed contract's cover dates in determining when to file the election petition and whether that reliance was reasonable.

### IV.

We do not preclude the possibility of a reasoned basis for the Board's result. Because we are not allowed to substitute a different rationale for the rationale provided by the Board, *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 249–50, 92 S.Ct. 898, 907–908, 31 L.Ed.2d 170 (1972), we remand for consideration of the questions we have identified.

ENFORCEMENT DENIED; REMANDED.