NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

CIRCLE A & W PRODUCTS
COMPANY, Respondent.

No. 79–7534.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 9, 1980.

Decided June 8, 1981.

Rehearing and Rehearing En Banc
Denied Aug. 18, 1981.

Linda B. Weisel, Washington, D. C., for petitioner.

Gerald R. Lucey, Oakland, Cal., argued, for respondent; Terry T. Lewit, Emeryville, Cal., Corbett, Kane & Berk, Oakland, Cal., on brief.

Before KENNEDY, PREGERSON and POOLE, Circuit Judges.

KENNEDY, Circuit Judge:

In this case, a union disclaimed representation of a bargaining unit during the existing term of a collective bargaining agreement with the employer. While the collective bargaining agreement with the first union was still extant, the employees selected a new union as their collective bargaining agent in an election supervised by the National Labor Relations Board (Board). The employer refused to bargain with the new union, claiming a right to stand upon the existing collective bargaining agreement until it expired. The employer's position was based on an elaboration of the Board's contract bar rule, discussed more fully below. The Board cited the employer for refusal to bargain, rejected the contract bar defense, and ruled that the employer had committed an unfair labor practice. The Board now petitions for enforcement of its order directing the employer to bargain. We grant enforcement.

In more detail, the background of the dispute is as follows: Circle A & W Prod-

ucts Co. (Circle A & W) manufactures electrical equipment in Portland, Oregon. Since 1962, it has engaged in a series of collective bargaining agreements with International Brotherhood of Electrical Workers Local 49 (Local 49), the most recent of which commenced on January 1, 1977, and was due to expire three years later. Following the filing of a union deauthorization petition, an election was held on March 30, 1977. A majority of employees voted to withdraw the authority of Local 49 to require union membership as a condition of employment. After this election, Local 49 continued to abide by the terms of the collective bargaining agreement. In the succeeding year, however, the union's efforts to reinstate the union security clause resulted in another election to decide the issue. Shortly before the election, Local 49 notified the employees of its intention to disclaim representation in the event the union security clause failed to gain majority approval. Once again, the employees voted against compulsory union membership, and as a consequence, Local 49 formally disclaimed in writing its representational interest in Circle A & W's employees on April 28, 1978.

In an attempt to challenge the disclaimer, Circle A & W filed unfair labor practice charges against Local 49, alleging a failure and refusal to bargain collectively as well as the restraint and coercion of its employees in the exercise of their section 7 rights in violation of sections 8(b)(1)(A) and 8(b)(3) of the National Labor Relations Act (Act), as amended 29 U.S.C. §§ 158(b)(1)(A) and 158(b)(3) (1976). Two days later, the Regional Director dismissed these charges, and the subsequent appeal to the Office of Appeals was denied.

In the interim, Warehousemen's Union Local No. 206, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Local 206) had filed a petition to represent those Circle A & W employees previously represented by Local 49. At the representation hearing held on May 17, 1978, Circle A & W contended that, because a valid collective bargaining agreement with Local 49 existed, Local 206's

petition must be rejected, citing the Board's contract bar rule. *East Mfg. Corp.*, 242 N.L.R.B. No. 5 (1979); *Mack Truck, Inc.*, 209 N.L.R.B. 1003 (1974); *Gate City Optical Co.*, 175 N.L.R.B. 1059 (1969); *Aircraft Turbine Service, Inc.*, 173 N.L.R.B. 709 (1968). Relying on Local 49's disclaimer of interest in representing the unit, the Regional Director found no contract bar present and, accordingly, directed that an election be held.

Based on the rejection of its contract bar defense, along with some procedural objections, Circle A & W requested a review of the Regional Director's decision, which the Board summarily denied on the ground that no substantial issues were raised. In the subsequent election, Local 206 was chosen to represent the unit and was promptly certified by the Board. Circle A & W then refused to commence collective bargaining with Local 206, resulting in an unfair labor practice charge filed by the union. The Regional Director this time issued a complaint. The Board, ruling on the general counsel's motion for summary judgment, found Circle A & W's actions violative of sections 8(a)(5) and (1) of the Act. The Board's order directs the company to cease and desist from engaging in the unfair labor practice and requires it to bargain with Local 206.

■ Circle A & W contends that under the Board's own precedents, employees are permitted to designate a new bargaining agent contrary to the terms of an existing collective bargaining agreement only if representation by the original union is wholly impracticable, such as in cases where there is a union schism, *Oregon Macaroni Co.*, 124 N.L.R.B. 1001, 1004 (1959); *Hershey Chocolate Corp.*, 121 N.L.R.B. 901, 906–12 (1958), *enf't denied on other grounds*, 297 F.2d 286 (3d Cir. 1961), or where the union is defunct, *Bennett Stove Co.*, 139 N.L.R.B. 1422, 1423 (1962); *Hershey Chocolate, supra.* There is logic to that position, and we agree with the employer that the foregoing cases do not square precisely with the Board's subsequent decision in *American Sunroof*

*Corp.-West Coast, Inc.*, 243 N.L.R.B. No. 172 (1979). There, as in this case, due to a dispute over a union security clause, a new bargaining agent was selected and the Board required the employer to bargain, thereby rejecting a defense based on the contract bar rule without explicitly recognizing the important policy to protect the employer by preserving the stability of a collective bargaining agreement. We agree with the respondent employer that employees are not free to avoid a contract by electing a new bargaining representative for any reason at all.[1]

The Board's contract bar rule is designed in recognition of the importance of preserving stability in collective bargaining agreements. *East Mfg. Corp.*, 242 N.L.R.B. No. 5 (1979). Simply stated, the rule holds that an existing collective bargaining agreement not exceeding three years will bar a petition for redetermination of representation in most instances. *Bob's Big Boy Family Restaurants v. NLRB*, 625 F.2d 850 (9th Cir. 1980). The rule does not find its source in the express language of the statute, nor is it judicially compelled. Rather, the Board has formulated the rule and thus has the principal discretion to waive or apply it in order to effectuate its policy underpinning. *Local 1545, United Brotherhood of Carpenters and Joiners v. Vincent*, 286 F.2d 127, 130–31 (2d Cir. 1960) (Friendly, J.); *Leedom v. Local 108, International Brotherhood of Electrical Workers*, 278 F.2d 237, 241–43 (D.C.Cir.1960). The Board discretion must not run counter to other policies of the Act, however, and we think certain guidelines are required in applying the rule.

The policy of preserving industrial stability is of sufficient importance that the Board is required to implement the contract bar rule to protect the employer's rights as well as those of the employees. Accordingly, neither a union nor its members may rely on a severance of their relations as a grounds for designating a new representative if a substantial motive underlying that rift is to avoid the terms of an existing collective bargaining agreement. It may be appropriate, if not required, moreover, for the Board to make an inference or presumption of a prohibited purpose to avoid the terms of a bargaining agreement if the reason for a union's disclaimer is insignificant, minor, or contrary to the policies of the Act. In such cases, the employer may not be required to recognize a new bargaining agent within the period to which the contract bar rule is applicable.[2]

On the other hand, the Board is also required to implement the policy of the Act to ensure that employees secure fair, adequate and effective representation by their designated collective bargaining agent. There will be circumstances, in addition to schism or union defunctness, in which a change in representation is necessary in order to implement that policy. Where the objectives of contract stability and adequate employee representation conflict, the Board must exercise its discretion to reach an appropriate balance, but it must give explicit recognition to both sides of this balance.

While the Board's adjudication of this dispute was not entirely satisfactory under these principles, we nevertheless rule that its order must be enforced. Circle A & W did not allege that the union disclaimer or the employees' petition for a new election was a pretext for avoiding the terms of the collective bargaining agreement. The employer did not allege collusion between the parties for this purpose. The employer, finally, did not allege that avoidance of the collective bargaining agreement was a sig-

---

1. While somewhat opaque, the decision in *American Sunroof* may be justified on the ground that the Board explicitly found no collusion or attempt to avoid the terms of the collective bargaining agreement by the employees or the disclaiming union. 243 N.L.R.B. No. 172, at 5.

2. A union might conceivably disclaim further representation of an employee unit for other improper purposes, and failure to apply the contract bar rule in such a situation could amount to an abuse of the Board's discretion. Such facts are not presently before the court and hence call for no ruling at this time.

nificant motivation of either the union or the employees. To the contrary, it stated that the dispute over the union security clause was the sole reason for changing bargaining agents. The employees did not object that the union had violated their section 7 rights in making this demand, and we think it a fair inference that there was a legitimate disagreement between the employees and their union on a fundamental matter of policy, rather than an attempt to avoid the terms of the contract with the company.

In these circumstances, Circle A & W was required to bargain with Local 206. The various procedural objections raised by the employer are without merit.

The petition is granted and the order is enforced.

PREGERSON, Circuit Judge (dissenting):

I respectfully dissent. I agree with the majority that the Board's adjudication of this dispute was not entirely satisfactory because the Board failed to articulate the basis for its conclusion that the contract-bar rule does not apply here. Unlike the majority, however, I would not draw the inferences necessary to support the Board's decision. Rather, I would remand the matter to the Board for an explanation of the basis of its decision not to apply the contract-bar rule.

As the majority correctly points out, the Board's longstanding interpretation of the contract-bar rule does not square precisely with the Board's most recent contract-bar decision, *American Sunroof Corp.-West Coast, Inc.*, 243 NLRB No. 172 (1979). Up until the *American Sunroof* decision, it appeared that a valid disclaimer of representational interest by a union was insufficient, standing alone, to suspend the contract-bar rule. Instead, under the formulation set forth in *East Manufacturing Corp.*, 242 NLRB No. 5 (1979), a valid disclaimer merely prompted the Board to examine the policies underlying the rule. In deciding whether to impose a contract bar, the Board would strike a balance between the need to preserve industrial stability and the need to protect the employees' right to a reasonable opportunity to change their bargaining representative. Balancing these important policy considerations was paramount in deciding whether to direct an election or to enforce the contract-bar rule.

In *American Sunroof*, however, the Board appeared to adopt, implicitly, a new interpretation of the contract-bar rule. In *American Sunroof*, without balancing the two competing policies, the Board suspended the contract-bar rule because of a valid disclaimer of interest by an incumbent union. Thus the current effectiveness of the contract-bar rule is questionable.

The majority opinion does not dispel this uncertainty. The majority succinctly states the policies relevant under pre-*American Sunroof* decisional law and endorses their consideration by the Board. Yet the majority then appears to validate the suspension of the contract-bar rule on the sole ground that Local 49's disclaimer was valid. I am uncertain whether the majority is deciding that a valid disclaimer alone effectively suspends the contract-bar rule or whether the competing policies must still be considered. To avoid creating further confusion, I would grant the Board an opportunity to clarify its position. We have in the past recognized and deferred to the Board's expertise in these matters before rendering an opinion and I see no reason to depart from that policy now.

Generally we do not substitute our rationale for the rationale provided by the Board in its decisions. *FTC v. Sperry & Hutchison Co.*, 405 U.S. 233, 249–50, 92 S.Ct. 898, 907–08, 31 L.Ed.2d 170 (1972); *Bob's Big Boy Family Restaurants v. NLRB*, 625 F.2d 850 (9th Cir. 1980). Because the Board did not explain its decision to suspend the contract-bar rule, I think it appropriate to remand the matter to afford the Board an opportunity to explain the underlying rationale of its decision.