**WESTWOOD IMPORT CO. INC., and Gamut Designs, Inc., d/b/a Westwood Import Co., Petitioners and Cross-Respondents,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent and Cross-Appellant.**

Nos. 80–7559, 80–7652.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 13, 1981.

Decided July 16, 1982.

As Amended Aug. 16, 1982.

Charles Voltz, Voltz, Cook & Orenstein, San Francisco, Cal., for petitioners and cross-respondents.

Linda Dreeben, Washington, D. C., argued for respondent and cross-appellant; Kenneth B. Hipp, Washington, D. C., on brief.

Before FLETCHER and MERRILL, Circuit Judges, and CLAIBORNE,* District Judge.

FLETCHER, Circuit Judge:

Westwood Import Co. (Westwood) and Gamut Designs, Inc. (Gamut) petition for review of a decision of the National Labor Relations Board (Board), reported at 251 N.L.R.B. 1213 (1980). The Board ordered the petitioners to cease and desist from refusing to bargain with the Union, to post appropriate notices, and to make employees whole for losses caused by unfair labor practices. The Board has cross-appealed for enforcement of its order. We enforce the Board's order.

## FACTS

Before April 1979, Westwood operated a wholesale import business in San Francisco. It had a contract with Local 3 of the Office and Professional Employees Union (Union) which represented a bargaining unit comprised of 22 employees. The contract term extended from December 30, 1976, to December 30, 1979.

In February 1979, Westwood notified the Union that Westwood intended to relocate its business in Hayward, approximately 30 miles from San Francisco. Westwood invited employees to transfer to the new location. Westwood and the Union met several times during February to discuss the effects of the proposed move. Westwood insisted that the Union terminate the existing bargaining agreement as of the date of relocation but the Union refused.

In February and March, Westwood began replacing employees who left because they did not wish to transfer to Hayward. Eleven employees continued working in San Francisco until March 30. By that date, the last day of operation in San Francisco, six new employees had been hired and had begun working in the San Francisco facility with the understanding that they would transfer to the Hayward facility after the San Francisco facility closed on March 30. Seven of the old employees, together with the six new employees, transferred to the Hayward facility on April 2. The Board found that the actual unit complement at the Hayward facility was seventeen.

After the move, Westwood began communicating directly with employees about the terms and conditions of their employment. The Union sent Westwood a letter requesting that it bargain with the Union and observe the terms of the collective bargaining agreement. Westwood responded that it did not recognize the Union as the bargaining agent of its employees because it harbored a good-faith doubt that a majority of the employees supported the Union.

In July 1979, Westwood sold its business to Gamut. The operation of the business was essentially unchanged after the transfer in ownership. Gamut re-interviewed Westwood's employees and retained all but two. Like Westwood, Gamut refused to recognize or bargain with the Union. Gamut made unilateral changes in the terms and conditions of employment and never responded to the Union's various inquiries.

---

* Honorable Harry E. Claiborne, United States District Judge for the District of Nevada, sitting by designation.

The Union filed unfair labor practice charges with the Board based on Westwood's and Gamut's refusal to bargain and on unilateral changes made by Gamut in terms and conditions of employment. The Administrative Law Judge (ALJ) and the Board found that Westwood violated Sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) & (5) (1976), by withdrawing recognition from the Union, repudiating the collective bargaining agreement, and refusing to supply the Union with requested information concerning the relocation. The ALJ and the Board also found that Gamut was a "successor" employer to Westwood. As such, they found that Gamut also violated sections 8(a)(1) and (5) by refusing to recognize and bargain with the Union, by unilaterally changing the terms and conditions of employment, and by refusing to supply the Union with relevant information upon request.

## DISCUSSION

### A. Standard of Review

An order of the Board is entitled to enforcement when the Board's factual findings are supported by substantial evidence on the record as a whole, and the Board's application of those findings is rational and consistent with the Act. *Construction Erectors, Inc. v. NLRB*, 661 F.2d 801, 803 (9th Cir. 1981).

### B. Application of the Contract Bar Rule

■ Westwood argues that the Board erred in its application of the "contract bar" rule in the circumstances of Westwood's relocation from San Francisco to Hayward. The rule expresses a long-standing policy of the Board not to entertain any challenge to an incumbent union's majority status, absent unusual circumstances, during the term of a collective bargaining agreement, not exceeding three years. *NLRB v. Circle A & W Products Co.*, 647 F.2d 924, 926 (9th

Cir.), *cert. denied*, 454 U.S. 1054, 102 S.Ct. 600, 70 L.Ed.2d 590 (1981); *Pioneer Inn Associates v. NLRB*, 578 F.2d 835, 838 (9th Cir. 1978). The rule helps ensure stability in collective bargaining agreements, *Pioneer Inn Associates*, 578 F.2d at 838, and therefore is applied even if a majority of the employees withdraw their support from the union. *Id.*[1]

The Board applied the contract bar rule in the circumstances of Westwood's relocation because it found that there was "continuity of enterprise" between the old and new plant locations. *See California Footwear Co.*, 114 N.L.R.B. 765 (1955), *enf'd sub nom. NLRB v. Lewis*, 246 F.2d 886 (9th Cir. 1957); *Tricor Products, Inc.*, 239 N.L.R.B. 65, 68, 71 (1978), *enf'd* 636 F.2d 266 (10th Cir. 1980). The Board examines the following factors in determining whether the requisite continuity exists: (1) continuity of operational methods, managerial hierarchy, customers, and services or products; (2) distance between the old and new plants; and (3) changes in either the size, makeup, or the identity of the employee complement. *See Tricor Products, Inc.*, 239 N.L.R.B. at 68. After examining these factors, the Board determined that Westwood's relocation had not significantly altered the circumstances from which the collective bargaining agreement arose, making application of the contract bar rule appropriate.

Westwood does not contest the general "continuity of enterprise" standard but argues that the rule was incorrectly applied in this case because less than a majority of the San Francisco employees transferred to the Hayward facility. Westwood rests its argument on the premise that the six replacement employees, hired just before the move to Hayward, cannot be counted as members of the San Francisco bargaining unit because they worked for such brief periods of time (one to six weeks) in the San Francisco operation. Both the ALJ and the Board included the six replacements as part of the

---

1. Unusual circumstances may make the application of the contract bar rule inappropriate. For example, the Board will not apply the rule in cases where the Union is unwilling or unable to represent the employees at the time its status is questioned. *Pioneer Inn Associates*, 578 F.2d at 839.

transferring unit.[2]  *See Arrow Co., a Division of Cluett, Peabody & Co.*, 147 N.L.R.B. 829, 831 (1964).

Westwood argues that the Board is applying an irrebutable presumption that the newly hired employees support the Union, a presumption that Westwood argues is irrational.  Westwood's argument, however, misconceives the nature and purpose of the contract bar rule.  By applying the contract bar rule under these circumstances, the Board is not invoking the presumption that "new hires" support the union in any particular ratio.  *Compare NLRB v. Edjo, Inc.*, 631 F.2d 604, 607 (9th Cir. 1980) (presumption approved in successor-employer case). As we have noted, the contract bar rule is applied even in cases where the union has lost majority status.  The only question considered by the Board was whether a sufficient number of employees had transferred so as to justify the application of the contract bar rule.  The Board did not have to decide whether the transferring employees supported the Union.

The Board's decision to count any employee who has worked in the old facility before the transfer as a member of the old bargaining unit also represents the application of a long-standing rule.  *See Arrow Co., a Division of Cluett, Peabody & Co.*, 147 N.L.R.B. 829, 831 (1964).  The rule is reasonably defensible, *see NLRB v. World Evangelism, Inc.*, 656 F.2d 1349, 1353 (9th Cir. 1981), and when applied to these facts, is not irrational or inconsistent with the

Act, *Construction Erectors, Inc. v. NLRB*, 661 F.2d 801, 803 (9th Cir. 1981).  It was Westwood's choice to replace their departing San Francisco employees with new employees at the San Francisco location. Their presence at both facilities is, itself, evidence of "continuity of enterprise."  The choice to train new Hayward employees in San Francisco bears significantly on "continuity of enterprise" in that it evinced an intent that the managerial policies and employee responsibilities there in practice be maintained at the new location.  Moreover, there is no indication in the record that these employees did not receive the benefits of the collective bargaining agreement during the time that they were employed in San Francisco.  We also agree with the Board that by adopting this rule, the parties affected by a relocation are afforded the certainty of a clear guideline.

There is substantial evidence in the record from which the Board could find that the other indicia of continuity of enterprise are present.  We find that application of the contract bar rule in these circumstances is consistent both with the Act and with the rule's goal of protecting stability in the collective bargaining relationship.[3]

## C.  Successor Employer

A successor employer is one who conducts essentially the same business as the former employer, and a majority of whose work force are former employees. *NLRB v. World Evangelism, Inc.*, 656 F.2d

---

**2.**  The Board found, alternatively, that a "substantial percentage" (40%) of the long-term San Francisco employees transferred and this, combined with the other factors, showed a sufficient continuity of enterprise.  Since we find that the Board's and the ALJ's finding that the six replacements were part of the transferring unit, we do not address the question whether a "substantial percentage" standard is sufficient. *See NLRB v. Marine Optical, Inc.*, 671 F.2d 11 (1st Cir. 1982) (adopting the "substantial percentage" standard); *Air Express International Corp. v. NLRB*, 659 F.2d 610, 617 n. 11 (5th Cir. 1981).  *But see, Fraser & Johnston v. NLRB*, 469 F.2d 1259, 1264–65 (9th Cir. 1972).

**3.**  Another important policy of the Act is to ensure employee free choice in representation. Naturally an employer who believes that a ma-

jority of employees no longer support the union will argue that the rule interferes with the employees' exercise of "free choice" rights.  But the contract bar rule applies even in those instances where an employer would be able to show the basis for good-faith doubt or the actual absence of majority status.  In these instances, the goal of industrial stability will conflict with employee free choice.  The contract bar rule represents the Board's effort to reconcile these competing goals.  *Bob's Big Boy Family Restaurant v. NLRB*, 625 F.2d 850, 851 (9th Cir. 1980).  Moreover, in the present case the contract had only six months to run at the time of the relocation.  If the new employees were dissatisfied with the Union after six months, they could petition for decertification.

1349, 1354 (9th Cir. 1981). If the predecessor's employees were represented by a union, and the predecessor's employees constitute a majority of the successor's workforce, a presumption arises that the successor's employees also support the union. *See NLRB v. Burns International Security Services, Inc.*, 406 U.S. 272, 278–79, 92 S.Ct. 1571, 1577, 32 L.Ed.2d 61 (1972); *NLRB v. Edjo, Inc.*, 631 F.2d 604, 606–07 (9th Cir. 1980). A successor employer therefore inherits its predecessor's duty to bargain with the union, although ordinarily it is not bound by the predecessor's collective bargaining agreement. *Burns*, 406 U.S. at 281, 92 S.Ct. at 1579.

Gamut contends that it is not a successor employer, that the circumstances of this case afforded it a reasonable basis for good-faith doubt about the union majority after it took over the business, that the evidence rebutted the presumption of majority support, and that therefore it should not have been required to bargain with the Union. *Edjo, Inc.*, 631 F.2d at 607. We reject this contention.

■ Substantial evidence in the record supports the Board's finding that Gamut as a successor employer, was required to bargain with the Union. After the sale, Gamut essentially continued Westwood's business operations and employed substantially the same work force as Westwood. The record also supports the ALJ's conclusion that Gamut neither demonstrated a good-faith doubt of the Union's majority status, nor rebutted the presumption of continued support for the Union. *See Burns*, 406 U.S. at 278, 92 S.Ct. at 1577.[4]

The ALJ also found that Gamut had a duty to remedy Westwood's unfair labor practices where Gamut purchased the business with full knowledge of the labor dispute. This duty, the ALJ found, arose because Westwood's unlawful refusal to bar-

gain would tend to produce employee disaffection from the Union.

■ A successor employer is not always required to remedy its predecessor's unfair labor practices. *Bellingham Frozen Foods, Inc. v. NLRB*, 626 F.2d 674, 680–81 (9th Cir. 1980), *cert. denied*, 449 U.S. 1125, 101 S.Ct. 941, 67 L.Ed.2d 110 (1981). The facts of each case must be examined, including the interests of the new employer and the employees, as well as the policies of federal labor law, to determine whether the legal obligation of remedying its predecessor's unfair labor practice should be imposed on a successor employer. *Howard Johnson Co. v. Hotel Employees*, 417 U.S. 249, 262 n. 9, 94 S.Ct. 2236, 2243 n. 9, 41 L.Ed.2d 46 (1974).

■ Substantial evidence supports the ALJ's finding that the circumstances were appropriate to impose upon Gamut the duty to remedy Westwood's unfair labor practices. *See Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 172–77, 94 S.Ct. 414, 419, 38 L.Ed.2d 388 (1973). Gamut does not contest the fact that it was aware of Westwood's dispute over union representation. In balancing the conflicting interests involved, we note that the prerogative of employers to rearrange their business must be balanced by some protection to employees affected by abrupt changes in the employment relationship. *See John Wiley & Sons v. Livingston*, 376 U.S. 543, 549, 84 S.Ct. 909, 914, 11 L.Ed.2d 898 (1964). The goals of avoiding labor strife and protecting the exercise of rights guaranteed employees by the Act are furthered by the imposition of this duty on Gamut under these circumstances. *See Golden State Bottling Co. v. NLRB*, 414 U.S. at 184–85, 94 S.Ct. at 425; *Golden Day Schools, Inc. v. NLRB*, 644 F.2d 834, 840 (9th Cir. 1981).[5]

---

**4.** The ALJ did not abuse its discretion in excluding the evidence proferred by Gamut on the basis that it was irrelevant or unreliable. *See Retired Persons Pharmacy v. NLRB*, 519 F.2d 486, 491 (2d Cir. 1975).

**5.** The Board stated its reasons for imposing this duty on successors in *Perma Vinyl Corp.*, 164 N.L.R.B. 968 (1967), *enf'd sub nom. United*

*States Pipe & Foundry Co. v. NLRB*, 398 F.2d 544 (5th Cir. 1968):

In imposing this responsibility upon a bona fide purchaser, we are not unmindful of the fact that he was not a party to the unfair labor practices and continues to operate the business without any connection with his predecessor. However, in balancing the equities involved there are other significant fac-

## CONCLUSION

The Board's application of the contract bar rule to prevent Westwood from withdrawing recognition of the Union after its relocation was appropriate in the circumstances of this case. Gamut was a successor employer and therefore had an obligation to bargain with the Union and to remedy Westwood's unlawful refusal to bargain.

ENFORCED.

tors which must be taken into account.... When a new employer is substituted in the employing industry there has been no real change in the employing industry insofar as the victims of past unfair labor practices are concerned, or the need for remedying those unfair labor practices. Appropriate steps must still be taken if the effects of the unfair labor practices are to be erased and all employees reassured of their statutory rights. And it is the successor who has taken over control of the business who is generally in the best position to remedy such unfair labor practices most effectively. The imposition of this responsibility upon even the bona fide purchaser does not work an unfair hardship upon him. When he substituted himself in place of the perpetrator of the unfair labor practices, he became the beneficiary of the unremedied unfair labor practices. Also, his potential liability for remedying the unfair labor practices is a matter which can be reflected in the price he pays for the business, or he may secure an indemnity clause in the sales contract which will indemnify him for liability arising from the seller's unfair labor practices.

164 N.L.R.B. at 969 (footnotes omitted).