**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MISSISSIPPI POWER & LIGHT COMPANY, Respondent.**

No. 84–4729.

United States Court of Appeals, Fifth Circuit.

Aug. 26, 1985.

Elliott Moore, Deputy Associate Gen. Counsel, Linda J. Dreeben, N.L.R.B., Washington, D.C., for petitioner.

Miller, Milam, Johnson & Moeller, Paul O. Miller, III, W. Thomas Siler, Jr., Jackson, Miss., for respondent.

Fred A. Lewis, Dir., Reg. 15, N.L.R.B., New Orleans, La., for other interested parties.

Before WISDOM, POLITZ and TATE, Circuit Judges.

TATE, Circuit Judge:

The National Labor Relations Board ("NLRB") petitions for judicial enforcement of its order requiring Mississippi Power & Light Co. ("MP & L") to bargain with the union representing employees added to a bargaining unit by a representation election held during the term of a collective bargaining agreement between MP & L and the union. MP & L maintains that the order should not be enforced because the NLRB allegedly acted irrationally in failing to find that an existing collective bargaining agreement barred the representation election under the Board's contract bar rule. We conclude that the order has a rational basis and was properly within the NLRB's substantial discretion. Accordingly, we enforce the order.

I.

The International Brotherhood of Electrical Workers, Local Union 605 and 985, AFL–CIO ("the union") has represented a bargaining unit comprised of MP & L's *service and maintenance employees* since about 1938. The most recent collective bargaining agreement between the union and the MP & L as to these employees is for the term of October 15, 1983 until October 15, 1985. That agreement does not include (and no agreement between the union and MP & L has included) MP & L's *storeroom and warehouse employees.*

In January 1984 the union petitioned the NLRB for certification as bargaining representative of these storeroom and warehouse employees. MP & L opposed the petition, urging that the Board's "contract bar rule" barred the election required for the union to be certified. The rule, generally stated, bars representation elections during the term of a collective bargaining agreement *if* the employees in question are included within the terms of the existing agreement. *See* II.*A, infra.* MP & L contended, as it contends here, that the contract bar rule must also be applied as to employees intentionally excluded from an existing collective bargaining agreement, and that the Board's failure to do so is irrational in view of its application of the contract bar rule so as to prevent disruption of contractual stability by mid-contract-term "unit clarification" procedures. *See* II.*B, infra.*

The Regional Director rejected MP & L's contention. The Board affirmed the Regional Director's decision. An election was held, and a slim majority of the storeroom and warehouse employees voted to be represented by the union. The NLRB certified the results of the election.

To obtain judicial review of the Board's decision to permit a representation election, MP & L refused to bargain with the union on behalf of the newly represented employees.[1] The union filed an unfair labor practice charge with the Board. A three-member panel of the Board determined that its previous decision affirming the Regional Director's election order was res judicata as to MP & L's contract bar challenge to the election. As that was MP & L's only justification for refusal to bargain, the Board panel concluded that MP & L's refusal to bargain was wrongful and in violation of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) & (5). Accordingly, the panel ordered MP & L "to cease and desist, to bargain on request with the Union, and, if an understanding is reached, to embody the understanding in a signed agreement."

The NLRB now petitions for judicial enforcement of its order.

## II.

A. *Decertification and Representation Elections: Rules Stabilizing Employee Bargaining Representative*

■ Employers and employees sometimes wish to change the identity of the employee bargaining representative—to change the union. Congress and the NLRB have sought to promote industrial stability by stabilizing—for a time—the identity of the chosen employee bargaining representative.

29 U.S.C. § 159(e)(2) provides:

No election shall be conducted pursuant to this subsection in any bargaining unit or any subdivision within which, in the preceding twelve-month period, a valid election shall have been held.

The statute applies to decertification elections and to representation elections.

As to representation elections, the NLRB has expanded upon § 159(e)(2) in its contract bar rule.

A succinct statement of the so-called "contract bar rule" as it currently exists is the following: *A valid, written contract of definite duration bars an election sought by an outside union for the length of the contract up to a maximum of three years.*

W. Oberer & K. Hanslowe, Cases and Materials on Labor Law: Collective Bargaining in a Free Society, at 317 (1972). *See* A. Cox, D. Bok & R. Gorman, Cases and Materials on Labor Law, at 262–66 (9th ed. 1981).

Simply stated, the rule holds that an existing collective bargaining agreement not exceeding three years will bar a petition for redetermination of representation in most instances.

*NLRB v. Circle A & W Products Co.,* 647 F.2d 924, 926 (9th Cir.1981). The Supreme Court twice has recognized the existence of the contract bar rule. *NLRB v. Burns International Security Services, Inc.,* 406 U.S. 272, 290 & n. 12, 92 S.Ct. 1571, 1583 & n. 12, 32 L.Ed.2d 61 (1972); *Brooks v. NLRB,* 348 U.S. 96, 98, 103–04, 75 S.Ct. 176, 178, 181–82, 99 L.Ed.2d 125 (1954) (implicitly).[2]

■ The cited authority recognizes that the contract bar rule is a "balance" of

---

**1.** MP & L's conduct was appropriate to obtain judicial review of the NLRB order requiring a representation election. *N.L.R.B. v. Rolligon Corp.,* 702 F.2d 589, 592 n. 2 (5th Cir.1983).

**2.** The Fifth Circuit approved the contract bar rule in *NLRB v. Sanson Hosiery Mills, Inc.,* 195 F.2d 350, 352 (5th Cir.1952). This is the only Fifth Circuit decision referring to the contract bar rule.

The definitive administrative statement of the rule is contained in Appalachian Shale Products Co., 121 NLRB 1160 (1958). In *Appalachian Shale Products,* the NLRB refined the rule and give it the form it continues to have today. For judicial discussion of the contract bar rule, see *Financial Institution Employees of America v. NLRB,* 752 F.2d 356, 365 (9th Cir.1984), cert. granted, — U.S. —, 105 S.Ct. 2318, 85 L.Ed.2d 838 (1985); *Corallo v. Merrick Central Carburetor,* 733 F.2d 248, 252 (2d Cir.1984); *Bob's Big Boy Family Restaurants v. NLRB,* 693 F.2d 904 (9th Cir.1982); *Westwood Import Co. v. NLRB,* 681 F.2d 664, 666 (9th Cir.1982); *Colson Equipment, Inc. v. NLRB,* 673 F.2d 221, 224 (8th Cir.1982); *Local 1545 v. Vincent,* 286 F.2d 127, 130–31 (2d Cir.1960) (Friendly, J.).

competing interests. The National Labor Relations Act is concerned with employee freedom of choice in selecting a bargaining representative. The Act also is concerned with industrial stability—and thus with the stability of the bargaining representative and the collective bargaining relationship between that representative and an employer. When employees have, in fact, exercised their choice to select a representative, the contract bar rule serves to limit an exercise of that choice by those employees for a three-year period in order to preserve stable collective bargaining relationships.

■ The NLRB has limited the application of the contract bar rule. In particular: "[i]n order to bar a representation election, the contract must encompass by its terms the employees sought to be represented." *Corallo v. Merrick Central Carburetor, Inc.*, 733 F.2d 248, 252 (2d Cir.1984) (citing *Appalachian Shale Products*). *See* Millbrook, Inc., 204 NLRB 1148 (1973); Photype, Inc., 145 NLRB 1268 (1964); Bingham-Herbrand Corp., 97 NLRB 65 (1951). Employees who have not been eligible to vote for a bargaining representative require a different balance between the competing interests. To apply the contract bar rule to them would permit the vote of other employees to disenfranchise the non-participating employees. The NLRB permits the stability goal to limit the franchise to one exercise in three years—but it does not permit the stability goal to eradicate the franchise for particular employees based on the vote of other employees.

B. *Unit Clarification Limits: Limits on Non-Voting Addition of Employees to Existing Units Covered by an Existing Contract*

Unit clarification procedures permit the NLRB to add employees to a particular bargaining unit. The addition is accomplished without an election. The added employees are considered covered by the existing collective bargaining agreement. The theory of unit clarification, insofar as adding positions to the collective bargaining unit, is that the added employees functionally are within the existing bargaining unit but had not formally been included due to changed circumstances (for example, evolving or newly created jobs). *See NLRB v. Magna Corp.*, 734 F.2d 1057, 1061 (5th Cir.1984); *Consolidated Papers, Inc. v. NLRB*, 670 F.2d 754, 756–57 (7th Cir.1982); Boston Cutting Die Co., 258 NLRB 771 (1981); Massachusetts Teachers Ass'n, 236 NLRB 1427 (1978); Arthur C. Logan Memorial Hospital, 231 NLRB 778 (1977); Copperweld Speciality Steel Co., 204 NLRB 46 (1973).

■ Limits on unit clarification result from its rationale. Employees may be added by unit clarification where, as in the creation of new job, their existence was unforeseen and they are functionally identical to employee classifications included within the existing unit. Employees *cannot* be added by unit clarification, however, where they *intentionally* and historically were excluded from the existing bargaining unit. The NLRB first announced this limitation on unit clarification in Wallace-Murray Corp., 192 NLRB 1090 (1971), and has adhered to the rule since. *See* Massachusetts Teachers Ass'n, 236 NLRB 1427 (1978).

Two factors in addition to the stability of bargaining agreements seem to support the *Wallace-Murray* rule. *First*, employee freedom of choice, where there has been intentional exclusion, supports the need for a vote by the excluded employees before they may be added. *Second*, addition of employees by unit clarification results in coverage of the added employees by an existing bargaining agreement without further bargaining; this materially alters the collectively bargained agreement if the added employees had been excluded intentionally from the agreement's coverage.

Though MP & L treats *Wallace-Murray* and the contract bar rule as identical, it is clear that they are not. The contract bar rule prevents employees who have voted for a union representative from changing

representatives for a three-year period. It does not prevent non-voting employees from having any vote at all during a three-year period. It protects only against a change in bargaining representative. On the other hand, the *Wallace-Murray* rule prevents non-voting employees from joining an existing bargaining unit *without voting* and prevents their participation in an existing collectively bargained agreement *without bargaining*. Thus, it protects against, not a change of representative, but the imposition of a representative and the inclusion of employees within the terms of a bargaining agreement without voting or bargaining.

## C. *Fringe Group Elections*

■ MP & L challenges the rationality of permitting representation elections when unit clarification is denied. It is apparent, however, that the NLRB does not just permit such elections—it consistently has stated that they are the proper procedure when unit clarification is inappropriate.

> The effect of *Wallace-Murray* is to leave the party seeking to include a group of employees in the unit two options: (1) to await the expiration of the current collective bargaining agreement and file another unit clarification petition with the Board, or (2) to seek an *immediate self-determination election* among the employees sought to be included.

*Consolidated Papers, Inc. v. NLRB*, 670 F.2d 754, 758 (7th Cir.1982) (emphasis added). *See* Copperweld Speciality Steel Co., 204 NLRB 46 (1973) (holding representation election rather than unit clarification as to existing positions not previously included in bargaining unit); Remington Rand Division of Sperry Rand Corp., 190 NLRB 488 (1971); W. Wilson, Labor Law Handbook, ¶ 231 (1963 & 1981 supp.).

In regulating fringe-group elections where there is an existing bargaining agreement, the NLRB rulings protect the employer if a fringe group selects a bargaining representative during the term of an existing bargaining agreement. The newly added employees may *not* invoke coverage by the existing agreement; rather, they must bargain the terms of a completely new agreement. This rule envisions representation elections by fringe groups during the life of a bargaining agreement. *See* Bay Medical Center, Inc., 239 NLRB 731 (1978); Abex Corp., 215 NLRB 665 (1974); Federal-Mogul Corp., 209 NLRB 343 (1974) (leading decision). *See generally NLRB v. Henry Vogt Machine Co.*, 718 F.2d 802 (6th Cir.1983); *NLRB v. Abex Corp.*, 543 F.2d 719, 721 (9th Cir.1976).

MP & L stresses the NLRB's language in Desert Palace, Inc., 209 NLRB 950 (1974). In *Desert Palace*, applying *Wallace-Murray*, the Board denied unit clarification. The Board indicated that the employees were protected because they could file for a representation election "at the appropriate time." Though the Board did not illuminate this phrase, MP & L believes it means that no time during the term of an existing collectively bargained agreement is appropriate. This appears to read far too much into the Board's casual language. The cited authority shows that the Board traditionally has considered any time to be appropriate. In light of the other Board decisions, MP & L's stretch of *Desert Palace* is unjustified.

## III.

In early contract bar rule decisions, Judges Friendly and Bazelon recognized that the NLRB has substantial discretion in deciding whether to apply the rule in a particular case and in formulating the contours of the rule. *Local 1545 v. Vincent*, 286 F.2d 127 (2d Cir.1960); *Leedom v. Int'l Brotherhood of Electrical Workers*, 278 F.2d 237 (D.C.Cir.1960). *See Brooks v. NLRB*, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954). More generally, the Supreme Court has emphasized the extent of the Board's discretion in administering the National Labor Relations Act:

It is the Board on which Congress conferred the authority to develop and apply fundamental national labor policy.

. . . . .

[T]hat body ... necessarily must have authority to formulate rules to fill the interstices of the broad statutory provisions.

. . . . .

The judicial role is narrow: The rule which Board adopts is judicially reviewable for consistency with the Act, and for rationality, but if it satisfies those criteria, Board's application of the rule, if supported by substantial evidence on the record as a whole, must be enforced. *Beth Israel Hospital v. NLRB*, 437 U.S. 483, 501, 98 S.Ct. 2463, 2473–74, 57 L.Ed.2d 370 (1978). Fifth Circuit decisions have repeated similar language. *See Local Union No. 4–14 v. NLRB*, 721 F.2d 150 (5th Cir.1983); *NLRB v. Rolligon Corp.*, 702 F.2d 589 (5th Cir.1983); *NLRB v. South Central Bell Telephone Co.*, 688 F.2d 345 (5th Cir.1982); *Amoco Production Co. v. NLRB*, 613 F.2d 107 (5th Cir.1980).

■ Contrary to MP & L's position, the rationality of both the attacked election rule and of the unit clarification rule is evident. Indeed, the two rules are constructed to fit together. The representation election is not a mere substitute for an impermissible unit clarification. Precisely *because* an intentionally excluded employee cannot be "clarified" into a bargaining unit, a representation election is permitted. In other words, the contract bars *non-elected* addition of employees to the bargaining unit but not an *elected* addition. Indeed, a contrary rule might be inconsistent with the National Labor Relations Act, in that some employees would be deprived of *any* representation for as much as three years simply because other employees had entered into a collective bargaining agreement not benefitting the unrepresented employees.

*Conclusion*

For the foregoing reasons, the NLRB order in this case is ENFORCED.