NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

W.A.D. RENTALS LIMITED d/b/a
Kelly's Private Car Service,
Respondent.

No. 442, Docket 90–4062.

United States Court of Appeals,
Second Circuit.

Argued Oct. 1, 1990.

Decided Nov. 27, 1990.

Stuart M. Kirshenbaum, Mineola, N.Y., for respondent W.A.D. Rentals, Inc.

Margaret G. Bezou, Washington, D.C. (Peter Winkler, Supervisory Atty., Jerry M.

Hunter, Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., of counsel), for petitioner N.L.R.B.

Before CARDAMONE and MINER, Circuit Judges, and POLLACK, District Judge *.

CARDAMONE, Circuit Judge:

We have a petition for enforcement by the National Labor Relations Board (Board) of its decision and order dated June 9, 1988, reported at 289 N.L.R.B. No. 9. The Board found that respondent W.A.D. Rentals, Limited, d/b/a Kelly's Private Car Service, violated §§ 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1), (5) (Act), and required it to cease and desist from unfair labor practices, more specifically to recognize and bargain with the union, and to post a remedial notice.

Respondent's principal argument is that there has been inordinate delay, in the first instance, on the union's part in filing charges and, in the second instance, on the Board's part in petitioning for enforcement. In the meanwhile, respondent says, a high employee turnover rate in its business has left few of the original employees now on its payroll that voted nine years ago for union representation. We have no doubt, as has often been observed, that procrastination is the thief of time. In this case, the union and the Board share slightly in the blame, but the chief culprit in our view is the employer, which first stalled and then later engaged in lengthy litigation thereby causing the delay of which it now complains.

I

Respondent operates a taxi service providing passenger service to and from the Long Island Railroad Station in Bayside, Queens, New York. Its drivers may not accept street fares. Instead fares are obtained by telephone calls from customers or from passengers picked up at the railroad station. The charges in this case were filed five years ago on July 2, 1985 by Local 3036, Taxi Drivers and Allied Workers Union, Service Employees International Union, AFL–CIO–CLC. Local 3036 began organizing respondent's drivers in 1980 and executed a Stipulation for Certification upon Consent Election on December 15, 1980, which was followed by an election on January 9, 1981 that resulted in a 15–14 vote in favor of the union. About a year later, in February 1982, the Regional Director certified Local 3036 as the bargaining representative of the company's employees. A number of negotiating sessions were held over the next several years but no collective bargaining agreement was signed.

An earlier unfair labor practice charge brought against the respondent company was dismissed by the Regional Director in 1984 because the union had failed to prepare and submit to respondent a draft agreement. Testimony before the Administrative Law Judge (ALJ) in the instant case regarding the delay in reaching a meeting of the minds on the terms of a collective bargaining agreement revealed that numerous telephone calls made in 1983 and in 1984 by union representatives to respondent's lawyer were not returned for one reason or another. The ALJ credited the union's substantially uncontradicted testimony on this issue.

Meanwhile, between 1981 and 1985 the company had an employee turnover of 500 percent—a rate characteristic of the industry—so that by the time the ALJ held the hearing on the present unfair labor charges, only three of the employees who had originally voted on union representation remained with the company.

The ALJ determined that the parties had never come to a meeting of the minds on a collective bargaining agreement, but that the company had a continuing obligation to negotiate with the union. He rejected respondent's claims that because the Local

* Hon. Milton Pollack, Senior Judge, United States District Court for the Southern District of New York, sitting by designation.

did not represent a majority of the employees it was no longer the employees' bargaining representative, as well as its further claim that because of the passage of time and the employee turnover rate, the company was entitled to have a good faith doubt as to the union's majority status.

Instead, the ALJ found the company violated §§ 8(a)(1) and (5) of the Act by withdrawing recognition from Local 3036 and by refusing to bargain with it in good faith. In his recommended order, the hearing officer required the company to cease and desist from such unfair labor practices, from interfering with or coercing employees in the exercise of their rights to conduct union activity, to post a remedial notice, and to bargain with the union. The Board summarily approved the ALJ's decision and order on June 9, 1988 and—as the company has since refused to bargain with the union—now petitions for enforcement of its order.

## II

We discuss first respondent's contention that the union and then the Board were guilty of such delay as to render the Board's direction to engage in collective bargaining moot. Focusing on the lapse of time between the activities that are the subject of the complaint of unfair labor practices and the remedy granted, none of the delay prior to the earlier July 1985 filing by the Local of an unfair labor practice charge may be ascribed to delay on the part of the union. With respect to the period from its certification in 1981 until it filed charges in July 1985, there is substantial evidence in the record viewed as a whole to support a finding that Local 3036 neither knew nor could have known of the employer's refusal to bargain because it had an ongoing bargaining relationship with the employer.

With respect to the subsequent period, the record shows that the unfair labor practice charge now before us was filed on July 2, 1985 and, after investigation, the Regional Director issued a complaint and notice of hearing on September 16. On September 25, the company filed an answer denying the complaint's allegations and moved on December 30 for summary judgment. On April 9, 1986, the Board denied the motion, and hearings were held in July 1986. On April 28, 1987, after the parties had filed briefs, the ALJ issued its 51–page recommended decision, which the Board adopted on June 9, 1988.

The company then advised the Regional Office that it would comply and posted the remedial notice. Only later, after further investigation, did the Regional Office conclude that the employer was in fact continuing to engage in dilatory tactics and persisting in its unlawful refusal to bargain. As a result, the case was referred for enforcement in May 1989. This recitation demonstrates that the company vigorously litigated this case at every stage, and it was on account of its tactics that the initiation of the instant enforcement proceeding was delayed. Hence, the processing of this case, though time consuming, has not been marked by undue delay. The June 9, 1988 order of the N.L.R.B. is enforceable, notwithstanding the passage of time and the employee turnover rate since the company's purported withdrawal of recognition from the union.

The respondent appeals essentially to our equitable powers, since the National Labor Relations Act contains no time limit for the enforcement of the Board's orders. *See N.L.R.B. v. Katz*, 369 U.S. 736, 748 n. 16, 82 S.Ct. 1107, 1114 n. 16, 8 L.Ed.2d 230 (1962); *Continental Web Press, Inc. v. N.L.R.B.*, 742 F.2d 1087, 1095 (7th Cir. 1984). Although we have the power to deny enforcement where it is unnecessary or futile, *see Emhart Industries v. N.L. R.B.*, 907 F.2d 372, 378–80 (2d Cir.1990); *N.L.R.B. v. Maywood Plant of Grede Plastics*, 628 F.2d 1, 7 (D.C.Cir.1980), the purposes that the Act was enacted to serve argue against denying enforcement in this case.

## III

We consider next the 500 percent employee turnover. During the year following its certification, a union enjoys a

conclusive presumption of majority employee support and, thereafter, it enjoys a rebuttable presumption of such support. *See Brooks v. N.L.R.B.*, 348 U.S. 96, 104, 75 S.Ct. 176, 181, 99 L.Ed. 125 (1954); *N.L.R.B. v. Aquabrom, Div. of Great Lakes Chem. Corp.*, 855 F.2d 1174, 1183 (6th Cir.), *amended on other grounds*, 862 F.2d 100 (1988). The policy behind the presumption of continuing majority support not only allows time for the bargaining process to work, *see Franks Bros. Co. v. N.L.R.B.*, 321 U.S. 702, 705, 64 S.Ct. 817, 819, 88 L.Ed. 1020 (1944), but, in addition, insisting on continued majority employee support, in an industry—such as the private car rental service—where there is a high employee turnover rate, would encourage an employer to commit unfair labor practices. An employer not anxious, for example, to have its employees organized would quickly realize that employee turnover would work in its favor, so that after the passage of time the only remedy available upon complaint of an unfair labor practice would be a cease and desist order and a new election. By playing a waiting game, the employer could indefinitely postpone serious bargaining with the union. *See Chromalloy Mining & Minerals Alaska Div., Chromalloy American Corp. v. N.L.R.B.*, 620 F.2d 1120, 1132 (5th Cir.1980). Where such tactics are shown, as we believe they are in the instant record, they should not be countenanced.

We recognized these policy considerations in refusing to require a new election when there had been some employee turnover between a union's selection by the employees and the Board's petition for enforcement of a bargaining order. *See N.L.R.B. v. Patent Trader, Inc.*, 426 F.2d 791, 792 (2d Cir.1970) (in banc). To allow an employer first to stall and then to engage in lengthy litigation and later to claim that in the meantime its high employee turnover rate has effectively left none of the employees on its payroll who originally voted for the union, would give employers an incentive to use such tactics. Providing such an incentive would serve only to encourage the commission of unfair labor practices. *See Glomac Plastics, Inc. v.*

*N.L.R.B.*, 592 F.2d 94, 101–02 (2d Cir.1979); *N.L.R.B. v. All Brand Printing Corp.*, 594 F.2d 926, 931 (2d Cir.1979).

### CONCLUSION

Although the administrative delay in petitioning for enforcement is regrettable, the appropriate remedy is to allow the employees, if they are so advised, to petition for decertification, not to require another election, particularly when union recognition originated through an election. *See N.L.R.B. v. Koenig Iron Works, Inc.*, 856 F.2d 1, 2–3 (2d Cir.1988).

Enforcement of the Board's order is accordingly granted.