**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**OIL CAPITAL ELECTRIC, INC., Respondent.**

No. 92–9570.

United States Court of Appeals, Tenth Circuit.

Sept. 15, 1993.

Before BALDOCK and KELLY, Circuit Judges, and CAUTHRON,* District Judge.

CAUTHRON, District Judge.

Petitioner, the National Labor Relations Board (Board), has filed an application for enforcement of its order directing respondent, Oil Capital Electric, Inc., to cease its unfair labor practices by refraining from interfering with, restraining, or coercing employees in the exercise of their statutory rights, and to recognize and bargain with the International Brotherhood of Electrical Workers, Local Union No. 584 (the Union) as the exclusive representative of the unit employees. We exercise jurisdiction pursuant to 29 U.S.C. § 160(e).[1]

From 1972 to 1986, respondent, a member of a multi-employer association, National Electrical Contractor's Association (NECA), entered into a series of pre-hire collective bargaining agreements between the Union and NECA. In 1987, bargaining on a new agreement broke down and about a dozen NECA members, including respondent, unilaterally implemented the terms of NECA's last offer. The Union commenced a strike against respondent and the other employers implementing the last offer. Picketing against respondent lasted six to eight months. During this period, the Union sought to become the exclusive bargaining representative of a unit of respondent's employees. The employees, all of whom were striking, voted unanimously in favor of union representation and the Union was certified as the unit's exclusive bargaining representative in September 1987.

After certification, respondent asserted it could no longer bargain as a part of NECA but was ready to bargain individually with the Union. The Union informed respondent that it was bound by any agreement the Union made with NECA. In late 1988, NECA and the Union reached a new agree-

Frederick C. Havard, Supervisory Atty., Michael J. Gan, Atty., Jerry M. Hunter, Gen. Counsel, Yvonne T. Dixon, Acting Deputy Gen. Counsel, Nicholas E. Karatinos, Acting Associate Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, Washington, DC, for petitioner.

Frank B. Wolfe III, Carl D. Hall, Jr., of Nichols, Wolfe, Stamper, Nally & Fallis, Inc., Tulsa, OK, for respondent.

* Honorable Robin J. Cauthron, District Judge, United States District Court for the Western District of Oklahoma, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this application. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

ment. Respondent refused to extend the terms of the agreement to its employees.

Thereafter, the Union and respondent had little contact until mid–1990, when a new business manager for the Union was elected. He met with respondent to encourage adoption of the NECA agreement. The business manager also informed respondent that "there was an interest of his employees to be in the Union" and that the union would be organized either from the top or from the bottom. R. Vol. I at 66–67. The Union then began passing out handbills to respondent's employees, the initial step in obtaining union representation. Later, the business manager discovered the 1987 certification and the Union ceased all organizing activities and requested negotiations with respondent.

Respondent refused to negotiate and withdrew its recognition of the Union, stating it had a good faith doubt that the Union enjoyed majority support. The Union then commenced this action. The administrative law judge (ALJ) held that respondent had violated 29 U.S.C. § 158(a)(1), (5) by withdrawing recognition from the Union without reasonable grounds to doubt that a majority of the unit employees supported the Union as their bargaining representative. The Board affirmed.

■ "In reviewing an order of the Board, we look at the record as a whole." *Central Soya Co. v. NLRB*, 867 F.2d 1245, 1247 (10th Cir.1988) (citing *NLRB v. R.L. Sweet Lumber Co.*, 515 F.2d 785, 793 (10th Cir.), *cert. denied*, 423 U.S. 986, 96 S.Ct. 393, 46 L.Ed.2d 302 (1975)). If that review indicates "the Board's decision is supported by substantial evidence, we will affirm, even though we might have made a different choice were the matter before us *de novo*. Likewise, if the Board's application of a rational rule is supported by substantial evidence, we will enforce its order." *Id.* (citation omitted).

Further, if based upon a reasonably defensible construction of the National Labor Relations Act, we ·"afford considerable deference to the Board's conclusions of law." *Manna Pro Partners, L.P. v. NLRB*, 986 F.2d 1346, 1351 (10th Cir.1993).

Upon certification as the exclusive representative of an employer's workers, the union enjoys an irrebuttable presumption of majority support for one year. *NLRB v. Curtin Matheson Scientific, Inc.*, 494 U.S. 775, 777–78, 110 S.Ct. 1542, 1544–45, 108 L.Ed.2d 801 (1990). Any refusal by the employer to collectively bargain with the representative union during that period is per se an unfair labor practice pursuant to 29 U.S.C. § 158(a)(5). *Id.* at 778, 110 S.Ct. at 1544. After one year, the presumption becomes rebuttable. *Id.* At that point, an employer may rebut the presumption by showing either that the union did not "in fact" enjoy majority support or that the employer had a good faith doubt, sufficiently based on objective factors, of the union's majority support. *Id.*

■ To prevail on an "in fact" showing, the company must make "a numerical showing that a majority of employees in fact opposed the union at the time of the refusal to bargain." *Manna Pro*, 986 F.2d at 1353 (citing *Curtin Matheson*, 494 U.S. at 788 n. 8, 110 S.Ct. at 1550 n. 8).[2]

■ To avail itself of the good faith doubt defense, the employer must produce at least some objective evidence substantiating its doubt of the union's continuing majority status.. *Johns–Manville*, 906 F.2d at 1431. The employer need not have conclusive proof that the majority of employees do not support the Union, only sufficient objective evidence to support a good faith doubt of majority status. *Bickerstaff Clay Prods. Co. v. NLRB*, 871 F.2d 980, 985 (11th Cir.), *cert. denied*, 493

---

2. We note that the ALJ here appears to have partially analyzed this case as if respondent were trying to make an "in fact" showing. The ALJ found one of respondent's witnesses to be "completely honest, though not altogether credible" due to his imprecision as to the exact numbers and names of the employees who had stated they did not want to be part of the Union. R. Vol. III, tab 1 at 5. Respondent, however, was not trying

to make an "in fact" showing and, therefore, identification of employees as to name and exact numbers was not required. *Johns–Manville Sales Corp. v. NLRB*, 906 F.2d 1428, 1432–33 (10th Cir.1990) (direct proof of employee dissatisfaction such as identifying employees in sufficient numbers to constitute absolute majority not required).

U.S. 924, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989); *see also Pioneer Inn Assocs. v. NLRB*, 578 F.2d 835, 839 (9th Cir.1978) (doubt must be based on " 'clear, cogent and convincing' " objective considerations; subjective evidence may be used only to bolster argument that doubt existed at relevant time (quoting *NLRB v. Tragniew, Inc.*, 470 F.2d 669, 675 (9th Cir.1972))).

We pay great deference to the inferences drawn by the Board from the credited testimony because Board members' expertise and experience in labor-management relations is an invaluable asset to the task. Nonetheless, derivative inferences which are tenuous, irrational, or unwarranted do not constitute substantial evidence and will be overturned on appeal.

*NLRB v. Tahoe Nugget, Inc.*, 584 F.2d 293, 304 (9th Cir.1978) (footnote omitted), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2847, 61 L.Ed.2d 290 (1979).

■ "[A] good-faith doubt as to the union's continuing majority status can arise only in a context free of the coercive effect of unfair labor practices." *NLRB v. Powell Elec. Mfg. Co.*, 906 F.2d 1007, 1014 (5th Cir.1990) (citing *United Supermarkets, Inc. v. NLRB*, 862 F.2d 549, 553 n. 6 (5th Cir.1989)). Here, the ALJ found, and the Union does not contest, that respondent did not engage in coercive tactics.

■ "[W]hether an employer entertain[ed] a good faith doubt of a union's majority status is a question of fact," *Bickerstaff Clay Prods.*, 871 F.2d at 985, which "must be determined in the light of the totality of the circumstances in each case," *Johns–Manville*, 906 F.2d at 1431. While each factor considered alone may be insufficient for a good faith doubt of majority status, the combination of factors may be adequate. Therefore, the assessment of the cumulative effect of the combination of factors is required. *Dalewood Rehabilitation Hosp., Inc. v. NLRB*, 566 F.2d 77, 80 (9th Cir.1977).

■ Respondent cited several factors to support its allegation that it had a good faith

doubt the Union enjoyed majority support. First, respondent had completely replaced its striking employees by the time it withdrew recognition of the Union. Second, the Union had had minimal, if any, contact with respondent or its employees from 1988 until 1990, in effect abandoning the employees. The Union did not organize shop stewards, nor did it request information about new hires, wages, benefits, working conditions, policies, procedures, discipline, or discharges. Further, the Union did not process any grievances.[3] R. Vol. I at 45–46. Third, the Union attempted to organize respondent's employees, thereby implying the Union did not consider itself to be the certified representative of the employees. Finally, the Union was unsuccessful in its organizational attempts. It did not receive sufficient signature cards to call an election and only ten percent of respondent's employees came to an organizational meeting.

■ Several of these factors, considered individually, clearly do not support respondent's position. Contrary to its assertion, respondent was not entitled to presume that those employees hired to replace striking employees did not support the Union. While new nonstrike hires are presumed to support the incumbent union in the same proportion as the employees replaced, *Curtin Matheson*, 494 U.S. at 779, 110 S.Ct. at 1545, no presumption is present as to whether striker replacements support or oppose the union, *id.* at 784, 796, 110 S.Ct. at 1548, 1554.

■ "[A] union's inactivity, particularly in failing to monitor contract provisions and pursue grievances, is a factor to be considered in arriving at a reasonable good faith doubt." *Pioneer Inn*, 578 F.2d at 839. However, "the mere passage of time, by itself," does not prove the union waived its right to bargain. *W.A.D. Rentals Ltd., d/b/a Kelly's Private Car Serv.*, 289 N.L.R.B. 30, 44, 1988 WL 214109 (1988), *enforced*, 919 F.2d 839 (2d Cir.1990), *but see New York Printing Pressmen & Offset Workers Union, No. 51 v. NLRB*, 575 F.2d 1045, 1049 (2d Cir.1978) (holding that "evidence of complete

---

**3.** We note that no evidence was presented showing that any grievances were presented to the Union. Therefore, the Union's failure to process

any grievances could show either the employees were unaware union representation was available or no grievances arose.

lack of activity by the Unions for a period of seven to nine months is *an* objective factor which, *in the circumstances of this case,* would clearly support a reasonable doubt that the replacements desired representation by the Unions.") (emphasis added).

While neither the turnover of employees nor the Union's inactivity, standing alone, is sufficient to rebut the presumption or to show a good faith doubt, neither factor stands alone here but is in combination with the other. Further, these two factors combine with an additional factor which strongly supports the respondent's position—the Union's attempt to organize respondent's employees in 1990.

We agree with the ALJ that by handbilling respondent's employees, "the Union must have harbored some doubt about its own status." R. Vol. III, tab 1 at 4–5. The ALJ, however, attached no significance to the Union's doubt of its status, holding that any such doubt was merely a mistake of fact which was not tantamount to abandonment. In affirming the ALJ, the Board held that the Union's organizational activities were merely attempts to increase Union membership and could not be considered an indication of either abandonment by the Union or union inactivity, citing *Grand Lodge of Ohio, Indep. Order of Odd Fellows d/b/a Odd Fellows Rebekah Home,* 233 N.L.R.B. 143, 1977 WL 9269 (1977), and *Sierra Dev. Co., d/b/a Club Cal–Neva,* 231 N.L.R.B. 22, 1977 WL 9455 (1977), *enforced,* 604 F.2d 606 (9th Cir. 1979).

We find these cases inapposite. In *Odd Fellows,* both the employer and the union acknowledged the union was the certified bargaining agent. The Board held that the fact that the union had been relatively inactive during the latter part of the contract term, but had increased its activity just prior to the contract renewal date, could not be used as a measure of union support among unit employees. 233 N.L.R.B. at 143. In *Club Cal–Neva,* a collective bargaining agreement had been entered into and the union had been active. The Board held that the union's "organizational activity merely demonstrates a normal desire for more members" and did not indicate the union no longer held majority status. 231 N.L.R.B. at 24.

While we agree that union activities intended to increase union membership cannot support an employer's good faith doubt that the union enjoyed a majority position, we cannot agree that the situation here was one where the Union was merely trying to increase its membership numbers. The evidence in the record shows that the Union's efforts were directed only at organizing the employees. The Union manager testified that his intention in initiating the organizing activities was "[t]o organize [respondent] through authorization cards, through interest, to show, in fact, at some given point in time, to [respondent] that there was an interest out there and that [its] employees did desire to be under a Union contract." R. Vol. I at 77–78. The handbills passed out to the employees requested that the employees "help organize your company." *See* R. Vol. II, Respt's Ex. No. 1. That these activities were directed solely at organizing the employees is further evidenced by the fact that all such activities ceased when the Union discovered it was already certified. If the Union were directing its activities merely at increasing the membership, the activities would not have ceased when the certification was discovered.

The evidence also showed the Union had been inactive for several years and had not performed any of the usual activities expected of a representative union. Respondent's good faith doubt of the Union's majority support was further supported by the unrefuted testimony that the Union was unable to obtain sufficient signature cards to request an election and only about ten percent of respondent's employees attended a Union organizational meeting.

We agree with the ALJ's opinion that the Union's activities were, more likely than not, based on a mistake of fact and that a mistake of fact is not tantamount to abandonment. However, we must look at the evidence from the point of view of the employer. In evaluating the facts available to determine whether the Union enjoys majority support, the employer cannot be expected to know whether the Union's organizational activities were motivated by a mistake or by its considered decision that it was not a certified represen-

464

tative of the employees and desired to be. *Cf. NLRB v. Dayton Motels, Inc.*, 474 F.2d 328, 331–32 (6th Cir.1973) (even if union is found to represent majority of employees, employer is not guilty of unfair labor practice if it had a "reasonably-grounded belief" union did not represent the majority), *aff'd after remand*, 525 F.2d 476 (6th Cir.1975).

Possibly, none of the factors respondent cited as support for its position would be sufficient, standing alone, to meet its burden. However, the Board is required to consider the cumulative effect of these factors. *See Dalewood Rehabilitation Hosp.*, 566 F.2d at 80. We conclude the Board did not adequately perform this duty.

Upon proper consideration of the factors presented by respondent, we hold respondent met its burden and produced sufficient objective evidence to substantiate its good faith doubt of the Union's continuing majority status. *See Coastal Derby Ref. Co. v. NLRB*, 915 F.2d 1448, 1455 (10th Cir.1990) (employer has burden of rebutting presumption of majority support); *Johns–Manville*, 906 F.2d at 1431 (employer must produce some objective evidence to substantiate its good faith doubt of union's majority status). We further hold the Board did not meet its burden of proving an unfair labor practice. *See Presbyterian/St. Luke's Medical Ctr. v. NLRB*, 653 F.2d 450, 455–56 (10th Cir.1981) (presumption imposes on party against whom it is directed burden of going forward with evidence to rebut presumption, but does not shift burden of proof which remains upon party against whom it was originally cast; therefore General Counsel must establish by preponderance of evidence that unfair labor practice occurred (citing Fed.R.Evid. 301)).

Therefore, we conclude, based on the reasons set out above, the Board's decision in this case is not supported by substantial evidence in the record as a whole. Respondent was legally justified in withdrawing recognition from the Union. Accordingly, we refuse to enforce the Board's order. Petitioner's application for enforcement is DENIED.