RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0184p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

ADAM N. BERRY,

        *Plaintiff-Appellant*,

    *v.*

EXPERIAN INFORMATION SOLUTIONS, INC.,

        *Defendant-Appellee*.

No. 23-1961

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:22-cv-11556—Mark A. Goldsmith, District Judge.

Argued: June 11, 2024

Decided and Filed: August 19, 2024

Before: COLE, GIBBONS, and READLER, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ARGUED:** Tarek N. Chami, CONSUMER ATTORNEYS, Dearborn, Michigan, for Appellant. Meir Feder, JONES DAY, New York, New York, for Appellee. **ON BRIEF:** Tarek N. Chami, CONSUMER ATTORNEYS, Dearborn, Michigan, for Appellant. Meir Feder, JONES DAY, New York, New York, Adam W. Wiers, JONES DAY, Chicago, Illinois, Daniel A. Baum, JONES DAY, Detroit, Michigan, for Appellee.

COLE, J., delivered the opinion of the court in which GIBBONS, J., joined in full. READLER, J. (pp. 15–19), delivered a separate opinion concurring in part and dissenting in part.

─────────────────

## OPINION

─────────────────

COLE, Circuit Judge. Pursuant to the Fair Credit Reporting Act (FCRA), Adam N. Berry alleged that Experian Information Solutions, a consumer reporting agency (CRA), negligently or

willfully published inaccurate information in Berry's consumer report that he owed spousal and child support.  After Berry sent Experian court orders that allegedly demonstrated that he had no outstanding support obligations, Experian continued to report that the Michigan Office of Child Support (OCS) showed Berry had a balance due.

The district court granted Experian's motion for judgment on the pleadings, reasoning that the FCRA required Experian to report any information received from OCS about Berry's failure to pay support.  Because Berry sufficiently pleaded that Experian did not adopt reasonable procedures to ensure maximum possible accuracy and did not reasonably reinvestigate Berry's consumer report after he challenged its accuracy, we REVERSE.

I.

A.

"A credit report can determine everything from whether a person can secure a credit card, purchase a home, win a new job, or start a small business."  *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 45 (2024).  The FCRA was passed to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) (citation omitted).  Because CRAs "assume[] a vital role in assembling and evaluating" consumer information, CRAs must "exercise their grave responsibilities with fairness, impartiality, and respect."  15 U.S.C. § 1681(a)(3)–(4).

CRAs must "adopt reasonable procedures" for reporting, *see id.* at § 1681(b), that "assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).  If a consumer disputes a report's accuracy, the CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the [consumer's] file."  15 U.S.C. § 1681i(a)(1)(A).  If a CRA negligently or willfully violates the accuracy mandate, the consumer may bring suit.  *Id.* at § 1681n (allowing private right of action for willful noncompliance); § 1681o (same for negligent noncompliance).  Relevant here, the FCRA states:

Notwithstanding any other provision of this subchapter, a consumer reporting agency shall include in any consumer report furnished by the agency in accordance with section 1681b of this title, any information on the failure of the consumer to pay overdue support which—

>  **(1)** is provided—

>>  **(A)** to the consumer reporting agency by a State or local child support enforcement agency; or

>>  **(B)** to the consumer reporting agency and verified by any local, State, or Federal Government agency.

15 U.S.C. § 1681s-1.

### B.

On January 9, 2021, Berry and his wife divorced. Per the complaint, Berry paid spousal and child support directly to his ex-wife and not through OCS. *See* Mich. Comp. Law § 552.604(2)–(3)(b). In mid-2021, Berry and his ex-wife reconciled, and Berry learned that OCS had recorded a balance of unpaid support. On June 1, 2021, Berry obtained a Michigan court order stating that "effective immediately, the obligation of [Berry] to pay child support and all arrears through [Michigan OCS] is abated until further order of the Court." June Order, ECF No. 28-2, PageID 2.

In late 2021 and early 2022, Berry attempted to refinance his student loans, but was notified by a lender that Experian reported that Berry owed spousal support. Berry moved for another court order waiving his obligation to pay spousal support and any arrears because it had already been paid. On March 29, 2022, a Michigan court entered an order stating that "the obligation of [Berry] to pay spousal support and all arrears through [OCS] is abated until [f]urther order of the Court." March Order, ECF No. 28-3, PageID 2–3.[1]

Berry then filed a dispute with Experian. On April 7, 2022, after verifying that OCS still reported an unpaid balance through an automated inquiry, Experian concluded that its consumer report was accurate. In May 2022, Berry filed a second dispute with Experian explaining that the

---

[1]Berry did not include copies of the June 2021 or March 2022 Michigan state court orders in the pleadings. Following oral argument on appeal, Experian filed a motion to take judicial notice of the state court orders. ECF No. 28-1. We granted the motion on July 2, 2024. ECF No. 29.

OCS report was inaccurate because he had already paid the support owed.  Before Experian responded, Berry filed a third dispute and attached the state court orders.  In late May 2022, Experian verified that OCS was still reporting a balance, and despite having the court orders, did not update Berry's consumer report.

On July 11, 2022, Berry filed the present action,[2] alleging that Experian willfully or negligently failed to: (1) use reasonable procedures to assure that its consumer reports about Berry met the standard of maximum possible accuracy as required under 15 U.S.C. § 1681e(b); and (2) reasonably reinvestigate the accuracy of the OCS reports as required under 15 U.S.C. § 1681i.  Berry alleged that he could not refinance his student loans at a lower interest rate or obtain a personal loan with favorable interest rates, because of the inaccurate reporting.

On January 23, 2023, Experian moved for judgment on the pleadings.  The district court granted the motion, reasoning that § 1681s-1, the FCRA's child support provision, requires Experian to "include in consumer reports <u>any</u> information [it] receive[s] from state child support enforcement agencies regarding failure to pay overdue child support."  Op., R. 41, PageID 257–58 (quotations omitted) (emphasis in original).  It reasoned that because Experian was required to report the unpaid balance, and had verified the information's accuracy with OCS, Berry's claims were not actionable.  Berry brought this appeal.

II.

We review de novo a grant of a motion for judgment on the pleadings.  *Moderwell v. Cuyahoga County*, 997 F.3d 653, 659 (6th Cir. 2021) (citations omitted).  "To survive a Rule 12(c) motion, the 'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "[A]ll well-pleaded material allegations of the [plaintiff's] pleadings . . . must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *Jackson v. Prof'l Radiology Inc.*, 864

---

[2]The complaint also initially included as defendants Bank of America, N.A., Trans Union, LLC, and Equifax Information Services, LLC, but they were voluntarily dismissed.  The complaint also alleged that Experian reported inaccurate information about Berry's Bank of America credit card.  On appeal, Berry only challenges the district court's findings related to his support obligations.

F.3d 463, 466 (6th Cir. 2017) (quotation omitted). The panel "need not accept as true legal conclusions or unwarranted factual inferences." *Barber v. Charter Twp. of Springfield*, 31 F.4th 382, 387 (6th Cir. 2022) (quoting *Jackson*, 864 F.3d at 466).

III.

A.

The FRCA states: "*Notwithstanding* any other provision of this subchapter, a consumer reporting agency *shall* include in any consumer report furnished by the agency . . . *any* information on the failure of the consumer to pay overdue support." 15 U.S.C. § 1681s-1 (emphasis added). "Notwithstanding" means "despite" or "in spite of." *Notwithstanding*, BLACK'S LAW DICTIONARY (11th ed. 2019) (using as an example "notwithstanding the conditions listed above, the landlord can terminate the lease if the tenant defaults"). "Shall" is commonly understood to indicate that "Congress intended strict and nondiscretionary application of the statute." *Cook v. United States*, 104 F.3d 886, 889 (6th Cir. 1997) (citing *Escoe v. Zerbst*, 295 U.S. 490, 493 (1935)). In this context, "any" indicates "a maximum or whole." *Any*, MERRIAM WEBSTER DICTIONARY (11th ed. 2024). Therefore, CRAs must include in their reports all information they receive from a government agency on a consumer's failure to pay support, regardless of other FCRA requirements. This comports with the canon of statutory interpretation that "a more specific provision takes precedence over a more general one." *United States v. Perry*, 360 F.3d 519, 535 (6th Cir. 2004).

Berry attempts to limit the application of the "notwithstanding" language to 15 U.S.C. § 1681c(a) (listing information excluded from consumer reports). But, the statute reads, "[n]otwithstanding any other provision of this *subchapter*." 15 U.S.C. § 1681s-1. The FCRA makes up subchapter III of chapter 41 of Title 15 of the United States Code, and the term "subchapter" is used throughout to apply to the entire FCRA. *Kirtz*, 601 U.S. at 50–51 (explaining that the definition of "person" within § 1681a applies throughout the FCRA "subchapter"). Accordingly, the application of § 1681s-1 is not limited to certain FCRA provisions, and Experian was required to report Berry's unpaid support balance. The district court erred, however, in ending its analysis at this step.

B.

Berry claims that Experian failed to "follow reasonable procedures to assure maximum possible accuracy of the" consumer report. 15 U.S.C. § 1681e(b). Berry must demonstrate that: (1) Experian reported inaccurate information; (2) Experian negligently or willfully failed to follow reasonable procedures to ensure maximum possible accuracy of his information; (3) he was injured; and (4) Experian was the proximate cause of his injury. *Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 941 (6th Cir. 2020) (citation omitted). We analyze § 1681i claims under a similar framework, so we will address the claims here simultaneously. *See Dickens v. Trans Union Corp.*, 18 F. App'x 315, 319 (6th Cir. 2001); *Losch v. Nationstar Mortg., LLC*, 995 F.3d 937, 944 (11th Cir. 2021) (explaining that the elements of a § 1681i claim are the same as a § 1681e(b) claim, except that the plaintiff "needn't show that the agency prepared and distributed a report").

We have yet to address whether a showing of inaccuracy is required for a § 1681i claim, but we have reasoned that while the statutory language does not require an inaccuracy as "a predicate to liability, damages would be almost impossible to prove without it." *Dickens*, 18 F. App'x at 318–19 (internal citations omitted). We join the weight of authority in other circuits to conclude that a showing of inaccuracy is an essential element of a § 1681i claim. *See Bibbs v. Trans Union LLC*, 43 F.4th 331, 344 (3d Cir. 2022) (holding that "without a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail") (quotations omitted); *Denan v. Trans Union LLC*, 959 F.3d 290, 296–98 (7th Cir. 2020) (same); *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018) (same); *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015) (same).

*Inaccuracy.* An inaccuracy in a consumer report occurs when "a CRA report[s] either 'patently incorrect' information about [the consumer] *or* information that was 'misleading in such a way and to such an extent that it [could have been] expected to have an adverse effect [on the consumer].'" *Twumasi-Ankrah*, 954 F.3d at 942 (quoting *Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001)) (emphasis and modifications in original). In other words, a consumer can demonstrate an inaccuracy where a report was materially misleading or incomplete, even if it was technically accurate. *Id.* at 943; *see also* 15 U.S.C. § 1681i(a)(5)(A)

(requiring CRAs to delete information if its reasonable reinvestigation of a consumer's dispute finds the information is "inaccurate or incomplete"). Consequently, "accuracy" under the FCRA encompasses truthfulness and completeness. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 629, n.5 (6th Cir. 2018); *see also Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 617 (6th Cir. 2012) (citing *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895–96 (5th Cir. 1998) as a case that "interpret[ed] [the] 'accuracy' requirement under § 1681e(b) to impose a duty to avoid material omissions").

Because the FCRA is designed to promote accuracy, "false impressions can be just as damaging as false information." *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 813 (7th Cir. 2023); *see also Cortez v. Trans Union, LLC*, 617 F.3d 688, 709–10 (3d Cir. 2010) ("Congress surely did not intentionally weave an exception into . . . the FCRA that would destroy its remedial scheme by allowing a [CRA] to escape responsibility for its carelessness whenever misleading information finds its way into a credit report through the agency of a third party."). For example, in *Twumasi*, the plaintiff Uber driver was fired after the CRA reported to Uber that the plaintiff had been involved in three car accidents. 954 F.3d at 939–40. While the Ohio Bureau of Motor Vehicles (BMV) furnished information to the CRA that did demonstrate that the plaintiff had been involved in three accidents, the BMV did not include a police report and court document adjudging him not at fault for two of the accidents. *Id.* at 940. Although the plaintiff submitted this counter-evidence of his lack of fault to the CRA, the CRA did not change his consumer report. *Id.*

On appeal, we held that the CRA's report was materially misleading because the CRA knew that the Ohio BMV records all accidents regardless of fault, and the plaintiff gave the CRA other public records demonstrating that he was not at fault for two of them. *Id.* at 944–45. The CRA omitted information that would have provided the full picture of Twumasi-Ankrah's driving record to his employer, and this omission cost the plaintiff his job—facts sufficient to survive a motion to dismiss. *Id.*

Taking Berry's allegations as true, Experian's omission of the court orders and its failure to inquire further resulted in a consumer report that was "'misleading in such a way . . . that it [could have been] expected to have an adverse effect [on Berry].'" *Twumasi-Ankrah*, 954 F.3 at

942. A reported delinquency in making support payments could negatively impact the perception of Berry's creditworthiness. *See e.g., McIntyre v. RentGrow, Inc.*, 34 F.4th 87, 97 (1st Cir. 2022) (concluding that a jury could find that omissions in the CRA's tenant screening report that the plaintiff had either been dismissed or paid the judgment in litigation against her were materially misleading and could adversely affect credit decisions against the plaintiff). The FCRA does not allow Experian to remain immune from liability for reporting incomplete information that could be materially misleading and impact Berry's perceived creditworthiness. As such, Berry's complaint meets the inaccuracy element for §§ 1681e(b) and 1681i.

In its motion to take judicial notice, Experian argues that the court orders do not waive all support obligations as Berry alleges. The court orders state: (1) "effective immediately, the obligation of [Berry] to pay child support and all arrears through [Michigan OCS] is abated until further order of the Court," *see* June Order, ECF No. 28-2, PageID 2; and (2) "the obligation of [Berry] to pay spousal support and all arrears through [OCS] is abated until [f]urther order of the Court." March Order, ECF No. 28-3, PageID 2–3.

At this stage of the litigation, we must take Berry's well-pleaded allegations as true, though we "need not accept as true . . . unwarranted factual inferences." *Jackson*, 864 F.3d at 466. While reasonable minds could differ on the meaning of "abated until [f]urther order of the Court," the language certainly does not undermine or directly contradict Berry's allegations. A plain reading of the orders lends support to Berry's allegation that he owed $0 in support at the time he provided the court orders to Experian. In other words, the pleadings and the court orders "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face'" that Experian should have known that Berry's consumer report was potentially inaccurate and misleading. *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

*Reasonable procedure*. What constitutes a "reasonable procedure" on the part of CRAs to investigate and ensure maximum possible accuracy, remains an open question. "[I]t would be unreasonable to 'require a live human being, with at least a little legal training, to review every [dismissal of a legal action] and classify it' because of the 'enormous burden' credit reporting agencies would incur." *Hammoud v. Equifax Info. Servs., LLC*, 52 F.4th 669, 675 (6th Cir.

2022) (quoting *Childress v. Experian Info. Sols., Inc.*, 790 F.3d 745, 747 (7th Cir. 2015)).  We have acknowledged, however, that the burden imposed on the CRA by the obligation to investigate lessens "once the consumer raises concerns that their information may be inaccurate" because the "the agency, 'incurs only the cost of reinvestigating that one piece of disputed information.'"  *Id.* (quoting *Losch*, 995 F.3d at 945).  In other words, once the disputed information is pinpointed, the "calculus changes" as to what may be "reasonable" procedure.  *Id.*

Upon receipt of the furnisher's information and the court orders, Experian was required to conduct a "reasonable reinvestigation" of the issue in dispute.  15 U.S.C. § 1681i(a)(1)(A).  Berry alleges that the automated form Experian sent to OCS to confirm the outstanding support balance was an unreasonable procedural response because Experian was aware of his challenge to OCS's reporting.  Berry asserts that Experian should have inquired into the state court information, or at a minimum included the June and March Orders in Berry's consumer report.

Experian did not take any action beyond sending the automated form to OCS.  *See Chaitoff*, 79 F.4th 815 (recognizing FCRA claims challenging the reasonableness of a CRA's procedure where it was within the CRA's competency to identify and correct the allegedly misleading information).  Experian argues it was not required to take further action because the situation represents an unadjudicated legal dispute between Berry and OCS, which it is ill-equipped to resolve.  Granted, CRAs are not well suited to adjudicate legal defenses to a debt.  Berry, however, alleges a factual dispute.  *Compare Losch*, 995 F.3d at 946 (concluding that while a bankruptcy court's discharge was unclear, the plaintiff's mortgage debt was definitively discharged and the CRA could address this factual dispute) *and Chaitoff*, 79 F.4th at 814 (concluding that the existence of a trial period plan (TPP) on a consumer's loan "is a factual, not legal, question within the competency of the CRA to identify and correct") *with Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 568–69 (7th Cir. 2021) (concluding that consumers who challenged their credit reports by disputing to whom their debts were owed had a legal dispute, and only the courts could determine the legal relationship between the parties).

"[W]hile '[t]aking notice of a previously resolved legal dispute involves some knowledge of the legal impact of court decisions, [ ] it does not require the [CRA] to make any legal determination about the underlying claim.'"  *Chaitoff*, 79 F. 4th at 815 (quoting *Chuluunbat*,

F.4th at 568). Reporting the existence of the court Orders "did not involve the application of law to facts." *Id.* at 808. Experian was not asked "to go beyond the face of . . . court records to determine whether they correctly report the outcome of the underlying action." *Id.* at 814–15 (quoting *Henson v. CSC Credit Servs.*, 29 F.3d 280, 285 (7th Cir. 1994)). "CRAs can read and understand legal documents," *see Chaitoff*, 79 F.4th at 815, and absent notice by the consumer that such documents contain errors, they may "rely on the accuracy of public court documents in preparing a credit report." *Henson*, 29 F.3d at 286. We find this logic convincing. Experian was capable of relying on a legal, court document of "unquestioned authenticity," and faces liability when "it ignores or overlooks documents of unquestioned authenticity, even if they relate to a legal dispute." *Chaitoff*, 79 F.4th at 815.

The same facts meet the standard for a § 1681i claim. Reinvestigation requires "more than simply including public documents in a consumer report or making only a cursory investigation into the reliability of information that is reported to potential creditors." *Cortez*, 617 F.3d at 713 (citation omitted). The term "'investigation' itself denotes a 'fairly searching inquiry,' or at least something more than a merely cursory review." *Boggio*, 696 F.3d at 616 (reviewing the definition of "investigation" in § 1681s-2, which establishes accuracy requirements for furnishers of information to CRAs).

This is especially true where the CRA relies on an automated verification process with the furnisher. Berry submitted three disputes and counter-documentation (from a court), but Experian continued to repeat the same ineffective steps. *See Chaitoff*, 79 F.4th at 819 (concluding that a reasonable jury could find that "repeating the same ineffective steps was not a reasonable response to [the plaintiff's]" second [dispute] letter). Therefore, Berry sufficiently pleads that Experian failed to follow reasonable procedures to reinvestigate Berry's dispute and ensure maximum possible accuracy of his consumer report.

The district court did not address whether Experian's actions were negligent or willful. A willful violation of the FCRA is committed in "reckless disregard of [its] statutory duty." *Safeco Ins. Co. of Am.*, 551 U.S. at 57. A CRA recklessly violates the Act if it takes an action that is objectively unreasonable and runs "a risk of violating the law substantially greater than the risk associated with" mere carelessness. *Id.* at 69. A CRAs actions are not willful if it "followed an

interpretation that could reasonably have found support in the courts[.]" *Id.* at 70, n.20. Finally, a "single inaccuracy, without more, does not constitute a willful violation of the FCRA." *Smith v. LexisNexis Screening Sols., Inc.*, 837 F.3d 604, 611 (6th Cir. 2016) (citation omitted).

Experian's interpretation of § 1681s-1 as obviating the accuracy requirement otherwise imposed by § 1681e(b) could have "reasonably found support in [other] courts," just as it did in the district court. *Safeco Ins. Co. of Am.*, 551 U.S. at 70, n. 20. And Experian did not entirely fail to act but investigated by sending verification requests to OCS. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156 (9th Cir. 2009) (explaining that a CRA's reasonable reinvestigation "consists largely of triggering the investigation by the furnisher"). Accordingly, Berry's pleadings only support a claim that Experian acted negligently. *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1336 (11th Cir. 2015) (finding that "[t]aking no steps other than contacting only [the data furnisher] with an [automated] form regarding the disputed entry might have been negligent, but willfulness or recklessness is a higher standard that ha[d] not been met").

Of note, at oral argument Berry's counsel stated that Experian should have removed the OCS balance from Berry's file or modified the report to show he owed $0 because it could not simultaneously report the balance and court orders. Oral Arg., 6:50–7:15, 8:30–9:10; 11:35–12:30. Berry's alternative position raised in the briefings—that Experian should have at least included the court orders in Berry's report—was not unequivocally abandoned. *See* Appellant Br. 29–30, 33. A party abandons an issue when it fails to present an argument as to that issue on appeal. *Intera Corp. v. Henderson*, 428 F.3d 605, 619 (6th Cir. 2005); *see also Priddy v. Edelman*, 883 F.2d 438, 446 (6th Cir. 1989) ("We normally decline to consider issues not raised in the appellant's opening brief."). In his opening brief, however, Berry twice argues that Experian could have at least included the court orders in his report. *See* Appellant Br. 29–30, 33. We do not disregard this position just because it was not addressed in oral argument. Additionally, Berry's counsel understandably emphasized his primary argument because Berry does not want his consumer report to reflect that he owes support.

*Adverse effect on credit decisions.* Berry also meets the pleading requirements of injury and causation. *Twumasi-Ankrah*, 954 F.3d at 941. Berry alleges that his would-be-lenders

denied him better interest rates because Experian's consumer report contained the allegedly inaccurate support information. It "requires little imagination to see how the omission of a [court order stating no further child support is owed] might affect a consumer's creditworthiness." *Chaitoff*, 79 F.4th at 813; *Pittman*, 901 F.3d at 639 (explaining that reporting that a consumer "was delinquent on his loan payments without reporting the TPP implies a much greater degree of financial irresponsibility").

\*\*\*

We do not decide whether Experian's procedures were per se reasonable or unreasonable. We need only determine whether Berry pleaded sufficient facts to state a claim that Experian was negligent in discharging its obligations to conduct a reasonable investigation and reinvestigation into the disputed information pursuant to §§ 1681e(b) and 1681i. We conclude that he did. Berry pleaded that Experian received the court orders but only ever sent automated verification forms to OCS and did not further investigate the state court documentation—an action that was fully within its control and competency to take. *See Losch*, 995 F.3d at 946–47 (concluding that CRA was negligent in discharging its reasonable investigation responsibilities when "[i]t did nothing, although it easily could have done *something*" such as checking the bankruptcy docket when the plaintiff gave "an account number, a discharge in bankruptcy, and an explanation," to dispute an inaccuracy in the plaintiff's credit report) (emphasis in original).

## C.

*Section 1681s-1(1)(B)*. We briefly address Berry's remaining arguments. A CRA must include in a consumer report information about overdue support which "is provided . . . to the consumer reporting agency and verified by any local, State, or Federal Government agency." 15 U.S.C. § 1681s-1(1)(B). For the first time on appeal, Berry argues in the alternative that this provision also requires Experian to include the court orders in Berry's consumer report because state courts are "state agenc[ies]" for purposes of the FCRA. This argument, however, was not forfeited. "[A]s long as a claim or issue was raised before the district court, a party may 'formulate[] any argument they like[] in support of that claim'" on appeal. *Chelf v. Prudential*

*Ins. Co. of Am.*, 31 F.4th 459, 468 (6th Cir. 2022) (alterations in original) (quoting *Yee v. City of Escondido*, 503 U.S. 519, 534–35 (1992)).

The FCRA defines a "State or local child support enforcement agency" as "a State or local agency which administers a State or local program for establishing and enforcing child support obligations." 15 U.S.C. § 1681a(j)(2). A state agency is an "executive or regulatory body" such as "offices, departments, divisions, bureaus, boards and commissions." *Agency* (3), BLACK'S LAW DICTIONARY (11th ed. 2019). States must establish child support enforcement agencies, *see* Title IV(D) of the Social Security Act, 42 U.S.C. § 654, which generally operate through the state's department of human services, department of justice, attorney general's office, or tax agency. *Child-Support-Enforcement Agency*, BLACK'S LAW DICTIONARY (11th ed. 2019). Conversely, courts are defined as "tribunal[s] constituted to administer justice." *Courts*, BLACK'S LAW DICTIONARY (11th ed. 2019). While a Michigan state court may issue orders creating, clarifying, modifying, suspending, or terminating child support obligations, *see* Mich. Comp. Law §§ 552.451a, 552.452, 552.455, 552.619(2)(b), OCS carries out these orders by "administer[ing]" and "enforc[ing]" Michigan's child support program. Mich. Comp. Law § 400.233(b).

Berry's reliance on 42 U.S.C. § 1983 litigation to argue that state courts are subject to sovereign immunity as arms of the state, provides no further support for his argument. While courts are understood to be government bodies subject to the sovereign immunity of a state within the § 1983 context, they are also commonly understood to be a third branch of government separate from the executive and legislative bodies. As such, we will not read into the FCRA an unsupported and expanded definition of "state agency" that includes state courts.

*Report v. file*. Berry argues that his reinvestigation claim, pursuant to § 1681i, must survive because it only requires inaccurate information be deleted from a consumer's file, not report, and § 1681s-1 only requires that unpaid child support information be included in a consumer's report. In *Collins*, the Eleventh Circuit held that the plain terms of § 1681i(a) were aimed at ensuring the completeness and accuracy of a consumer's file because Congress did not use the word "report," like it did in § 1681e(b). 775 F.3d at 1335. It reasoned that because § 1681i(a) tied liability to the inaccuracy of a consumer file, a plaintiff was not required to

demonstrate publication of that inaccuracy to a third party to establish damages for a § 1681i(a) claim. *Id.* The distinction between "report" and "file" is immaterial for our purposes, however, because Berry challenges information in his published consumer report. *See Losch*, 995 F.3d at 944 (explaining that because the plaintiff challenged the CRA's reinvestigation of his consumer "report," not his file, it could simultaneously address the reasonableness analysis for the § 1681e(b) and § 1681i(a) claims).

IV.

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

———————————————

**CONCURRENCE / DISSENT**

———————————————

CHAD A. READLER, Circuit Judge, concurring in part and dissenting in part. Because Adam Berry abandoned at oral argument the lone argument the majority opinion believes is viable, we should affirm the district court's judgment dismissing his complaint.

In our circuit, oral argument has become the exception, not the rule. The vast majority of cases are decided on the briefs. *U.S. Courts of Appeals—Cases Terminated on the Merits After Oral Arguments or Submission on Briefs*, U.S. Courts (Sept. 30, 2023), https://perma.cc/NJ7X-MUVB (noting that oral argument is held in only 13.6% of cases in the Sixth Circuit). So when we entertain oral argument, it is to address issues for which we "seek counsel's help in clarifying or expanding on the points made in the brief." *See Oral Argument Guidelines* (6th Cir. Jan. 1, 2022), https://perma.cc/9VKT-SMFS.

In this case, oral argument was dedicated to clarifying whether Berry had pleaded a viable claim under the Fair Credit Reporting Act. By way of background, Berry's complaint alleged that Experian had violated the law's terms by reporting inaccurate information about his creditworthiness. *See* 15 U.S.C. § 1681e(b). The district court disagreed and dismissed the case. While Berry enjoyed the right to appeal that judgment, doing so left it incumbent upon him to convince us why the district court erred. And on that front, Berry's appellate briefs were not entirely clear.

Primarily, he asserted that Experian, upon receiving copies of two court orders from Berry, should have removed child support delinquency information from his credit file and report, what might be labeled his "removal theory." At other times, he alluded to the idea that Experian should have "at the very least" somehow "include[d]" information about the court orders in Berry's file and report. Appellant's Br. at 11. Accepting that Experian was statutorily required to report the child support delinquency, the company, Berry might be understood to say, nonetheless violated the FCRA when it failed to supplement Berry's file and report with information about the court orders. If viewed as a claim separate from his removal theory, the

contention could be labeled Berry's "supplement theory."  Yet Berry's briefing was wanting to say the least.  In the end, it was not evident whether Berry's supplement theory was a separate purported violation of the FCRA or instead simply a component of his removal theory.  *See, e.g.*, Appellant's Br. at 11 (arguing Experian erred by failing to remove "and" failing to supplement).

Against this backdrop, at oral argument we sought to clarify Berry's position.  *See* 6th Cir. R. 34(g)(1) ("The purpose of oral argument is to emphasize and clarify the argument in the briefs.").  On multiple occasions, we asked Berry what Experian should have done when it received the court orders—remove the child support delinquency information from the file and report, supplement the file and report with the court orders, or some combination of the two.  Each time, Berry offered the same answer.  Experian, Berry explained, should have removed the delinquency information from Berry's file and report:

- Q: [Delete] it on the file or in the report?  What are we—?
- A: They would have to remove it from the file.  Oral Arg. at 4:06–4:10.

- Q: So are you saying the child support information received from the state agency should have been removed from the file?
- A: Correct.  *Id.* at 4:12–4:18.

- Q: What concretely was Experian supposed to do?
- A: So they should have deleted upon receiving his dispute—they should have deleted [it] from his file.  *Id.* at 5:55–6:04.

- Q: What was Experian's obligation, under the law, at that point, once it received the June 21 and March 22 Michigan state court orders?
- A: They should have removed it from his file.  *Id.* at 6:40–6:53.

- Q: [They] should have removed what?
- A: This collection account or should have modified it to report that it was [a] zero balance.  They should have done something to remove this from his file.  *Id.* at 6:55–7:02.

- Q: Remove it from the file, and also, in terms of issuing a report, the report should not reflect that child support is owed?  Is that what you're arguing?
- A. Correct. Yes.  *Id.* at 7:03–7:15.

- Q: Your reasonable investigation was supposed to lead to a removal of the report from the [child support] agency from the file?
- A: Correct. *Id.* at 8:27–8:34.

As these seven accounts make abundantly clear, Berry's sole position was that the FCRA required Experian to delete from his file and report the delinquency information the child support agency was continuing to provide.

Not once did Berry advocate for an alternative theory of liability, including a supplement theory. Nonetheless, to give Berry a chance to frame his case more broadly, the panel returned to the issue later in Berry's opening argument. Inviting Berry to address the possibility of a distinct supplement theory, we asked whether it would have been sufficient, in Berry's mind, for Experian to collect information from both the child support agency and the court and include all of it in Berry's file and report:

> Your bottom line is that the file had to exclude the information from the state agency? It would not have been good enough, for example, to say, "The agency says this. The court says this. We don't know what to do with it because we're not legal adjudicators in Michigan."? Your point is that it had to remove any reference to the state agency's report, and if it has any reference to it, that's a violation of a federal statute?

*Id.* at 11:38–12:02. Berry responded, "Correct. There isn't really a way to report both positions within a consumer report. It is either they verify it as accurate, or they can't verify it, and they have to remove or delete it or modify it [to zero]." *Id.* at 12:02–12:10. The panel then followed up, asking whether the file could "include both" sets of information, even if they were "conflicting." *Id.* at 12:10–12:22. Berry responded bluntly, "It doesn't work like that." *Id.* at 12:27–12:30.

Berry emphasized this same theme during rebuttal. He was asked, "[The delinquency information has] to be in the file to be in the report?" He responded, "So there's a distinction here, yes, but it has to be removed." *Id.* at 29:22–29:30.

Taking all this together, there is little doubt that even if one read Berry's brief as alleging a supplement theory of relief, he abandoned it at oral argument. Parties routinely make these strategic choices, as we have all acknowledged. *See, e.g.*, *Haviland v. Metro. Life Ins.*, 730 F.3d

563, 570 (6th Cir. 2013) ("At oral argument, the plaintiffs abandoned their claim under § 1132(a)(1)(B)."); *United States v. McCarty*, 628 F.3d 284, 289 (6th Cir. 2010) ("At oral argument, the government abandoned seeking plain error review, so we examine the reasonableness of McCarty's sentence for abuse of discretion."). We should honor that choice again today. Doing otherwise upsets our time-tested adversarial process. And it sets a worrisome precedent. After all, if Berry's statements did not amount to a concession of his supplement theory argument, it is difficult to think of how a party could ever abandon a claim at oral argument. *See, e.g.*, *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 871 (1982) (plurality opinion) (recognizing that parties can "concede" positions at oral argument, both explicitly and implicitly).

The majority opinion sees things differently. While it properly rejects Berry's removal theory, it embraces the supplement theory as an alternative, even when Berry would not. To the majority opinion's eyes, the argument was "not unequivocally abandoned." Majority Op. at 11. Instead, it simply "was not addressed in oral argument," as "Berry's counsel understandably emphasized his primary argument." *Id.* Even accepting the majority's view of the governing standard, *but see Pico*, 457 U.S. at 871 (acknowledging that parties can waive positions without unequivocal abandonment), this version of events is not easy to accept. At the outset, to say the issue "was not addressed in oral argument" ignores most of what took place before the panel. Indeed, much of the argument focused on the question of what Berry believed the FCRA obligated Experian to do upon receiving the court orders. And without exception, Berry gave only one answer: remove the delinquency information.

But Berry went even further, disclaiming any theory under the FCRA that did not include removal. As mentioned, we asked Berry if Experian could have supplemented the child support delinquency information in the file and report with the court orders, rather than deleting the information outright. He did not just say no—he said that it was impossible to "report both positions within a consumer report." Oral Arg. at 12:02–12:10. In the end, Berry conceded that "[t]here really [wa]sn't a way" Experian could have lawfully supplemented his file and report. *Id.* In his words, "It doesn't work like that." *Id.* at 12:27–12:30. This was more than merely emphasizing a primary argument. It was a plain abandonment of any alternative theory based on

the idea that Experian could include both the delinquency information and the court orders in Berry's file and report. Why not take Berry at his word?

Between this exchange and the eight other instances where Berry said the delinquency had to be deleted, he made his litigating position abundantly clear. That caused the panel to focus its remaining questions on the removal theory. Had there been any lingering doubt over whether Berry had disavowed a supplement theory, surely one of the panel members would have inquired further on the topic. *See Oral Argument Guidelines*, *supra* (explaining that we utilize oral argument to "seek counsel's help in clarifying or expanding on the points made in the brief"). None did.

\*     \*     \*     \*     \*

A fundamental principle of judging is that we adjudicate cases based on the arguments the parties present. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020). In other words, we take a case as it is, not as we might think it could be. And as this case was argued to us, over and over Berry embraced one legal theory and eschewed others. Had Berry pursued his supplement theory, I may well agree with the majority opinion that the theory survives a Rule 12(c) motion. That is why we asked the questions we did. It is also why we must accept the answers Berry conveyed. By overlooking Berry's strategic choices and related concessions, we in essence rewrite his oral argument. In the process, we regrettably relegate oral argument to a virtual nullity. What results is a remand to the district court to resolve whether Experian should have taken steps that Berry told us "[t]here really [wa]sn't a way" for the company to achieve because "[i]t doesn't work like that." Oral Arg. at 12:00–12:28. A fairly easy assignment for the district court, but an odd course nonetheless.